The **STATE** of Ohio, Appellant,

v.

**SESS**, Appellee.

[Cite as *State v. Sess* (1999), 136 Ohio App.3d 689.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990246.

Decided Dec. 17, 1999.

─────────────

*Tim Oliver,* Hamilton County Prosecuting Attorney, and *Rachel A. Hutzel,* Assistant Prosecuting Attorney, for appellant.

*James N. Perry,* for appellee.

─────────────

HILDEBRANDT, Presiding Judge.

Plaintiff-appellant, the state of Ohio, appeals the judgment of the Hamilton County Court of Common Pleas granting the motion to suppress filed by defendant-appellee, John Sess. For the following reasons, we affirm the judgment of the trial court.

Sess was a veteran officer with the Cincinnati Police Division. In 1997, he transferred to the Regional Narcotics Unit ("RENU"), an operation conducted jointly by the Hamilton County Sheriff and the Cincinnati Police Division, under the command of Captain Keith Groppe. On Sess's first day at RENU, April 21, 1997, Groppe informed Sess that Sess would be taking a polygraph test as part of his orientation. Groppe asked Sess to reveal any information that might come out during the polygraph test. In response, Sess told Groppe that, in the early

1980s, he had planted marijuana on a suspect in a drug case. Sess, though, apparently did not tell Groppe any identifying information about that incident, such as the name of the suspect, the exact date when the incident occurred, or the names of the other officers who had worked on the case.

On April 24, 1997, during an investigation by the police division's internal-affairs unit, and after he had asserted his *Miranda* rights, Sess signed a document entitled "Rule 2.26—Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division." That document stated:

"A member must, upon direction of the Police Chief or his designated representative, respond completely and truthfully to all questions that are specifically, directly and narrowly related to his performance as a police officer. Since the member is required by rule and case law to answer, and has no right against self-incrimination, the response to such questions may be used only in the application of administrative justice. The member is immune in any subsequent related criminal proceeding from the uses of his answers or fruits thereof.

"Should the member fail or refuse to respond completely and truthfully to all questions of this nature directed to him as a member of the Police Division, he will be given a direct order to do so. Refusal or failure to then respond will result in the pursuit of disciplinary action against the member for failure to obey the order. That disciplinary action may result in administrative sanction against the member which may include dismissal from his employment as a member of the police division."

After signing the 2.26 document, Sess told the investigators the details of the incident where he had planted drugs on the suspect. Among other things, he told them that the suspect's name was Shadarle Ragan. Also, he explained that Officer Gary Seal had been involved with Ragan's arrest. (Sess explained that Seal had been unaware that the drugs had been planted.)

Ultimately, Sess was terminated from the police department. Also, he was criminally indicted for tampering with evidence and tampering with records. He pleaded not guilty and filed two motions to suppress. The first asked the trial court to suppress his April 21, 1997, statements to Groppe. The trial court granted the motion, but this court reversed that judgment on appeal, holding that Sess was neither in custody nor suspected of criminal activity when he made the statements.

The second motion asked the court to suppress the statements made on April 24, 1997. Again, the trial court granted the motion. The court held that the statements themselves and all the fruits derived from them were inadmissible.

The state, certifying that this matter cannot proceed without the suppressed evidence,[1] now appeals the granting of the second motion to suppress. The state asserts three assignments of error.

In the state's first assignment, it asserts that the court erred in concluding that Sess's statements made on April 24 were immunized. In response, Sess relies upon the Ohio Supreme Court's decision in *Jones v. Franklin Cty. Sheriff*,[2] which he claims controls here. In *Jones*, the court upheld disciplinary action taken against a deputy sheriff who was required to answer questions regarding alleged misconduct. In doing so, the court held that a public employee may be required to answer questions regarding misconduct if the employee is assured that criminal prosecution will not result from compliance with the investigation.[3] In *Jones*, the narrow issue before the court was whether the public employee's silence when asked to divulge potentially incriminating information could form the basis of disciplinary proceedings.[4]

■ Though the trial court in the instant case based its decision upon the holding in *Jones*, we conclude that the issues here are properly decided without reference to that case. It is well settled that coerced statements are not admissible in a criminal prosecution. As recognized by the Supreme Court of the United States in *Garrity v. New Jersey*,[5] if a public employee is forced to make the Hobson's choice of answering questions that may incriminate him or of forfeiting his job, statements made pursuant to such questioning are not voluntary and cannot be used in a subsequent prosecution against the public employee. The prohibition against the use of statements in such cases is properly based, therefore, not upon the doctrine of immunity, but rather upon the firmly entrenched constitutional doctrine that coerced statements cannot be used against a defendant in a criminal case.[6]

■ And while it can be argued that the grant of immunity removes the taint of coercion from investigative proceedings,[7] we cannot accept the proposition that

1. See Crim.R. 12(J).

2. (1990), 52 Ohio St.3d 40, 555 N.E.2d 940.

3. *Id.* at 44, 555 N.E.2d at 945.

4. *Id.* at 42, 555 N.E.2d at 943.

5. (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562.

6. We implicitly recognized this principle in our judgment entry of November 18, 1998. In holding that the statement given by Sess on April 21, 1997, was not subject to suppression, we emphasized that Sess's employment status was not threatened on that date.

7. See *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212.

the grant of immunity in the instant case rendered the potentially incriminatory statements voluntary with respect to the subsequent criminal prosecution. Indeed, Sess's assertion of his Fifth Amendment rights prior to the questioning by the internal-affairs unit indicated his unwillingness to make any statement. Further, in the Rule 2.26 document itself, it is acknowledged that Sess was required to answer and could not invoke his right against self-incrimination without facing disciplinary measures.

Thus, the Supreme Court of Ohio's pronouncements concerning immunity in *Jones*, which involved an appeal from the State Personnel Board of Review and not a criminal prosecution, need not be discussed in resolving the instant appeal. We hold merely that Sess's statements were involuntary because he was faced with the prospect of losing his employment if he refused to answer the questions posed by the internal-affairs unit. Thus, the trial court properly suppressed the statements, and the first assignment of error is overruled.

■ The state's second assignment involves the testimony of Seal and Ragan, whose identities were revealed by Sess in his statements. The state argues that, even if Sess's statements were properly suppressed, the testimony of Seal and Ragan should still be admissible. The state's argument involves what is known as the independent-source rule. The rule provides that if the government can prove that evidence to be used at trial is derived from sources "wholly independent" of immunized testimony, then that evidence will not be suppressed.[8] Having held that the doctrine of immunity was unnecessarily invoked in the instant case, we need not address the independent-source rule. Thus, the second assignment of error is overruled.

■ The state's third assignment of error, however, raises issues similar to the independent-source rule. This assignment of error also involves the testimony of Seal and Ragan. In this assignment, the state asserts that Seal's and Ragan's identities and testimony should not be considered the fruits of Sess's tainted testimony, as their identities would have been inevitably discovered even if Sess had not identified them in his testimony. The inevitable-discovery rule provides that illegally obtained evidence is properly admitted in a trial proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation.[9] We conclude that the rule does not apply in the case at bar.

---

8. See *Kastigar, supra; State v. Conrad* (1990), 50 Ohio St.3d 1, 4, 552 N.E.2d 214, 217.

9. See *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 O.B.R. 259, 480 N.E.2d 763, syllabus (citing *Nix v. Williams* [1984], 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377).

■ The essence of the state's argument is that Seal's and Ragan's identities would have been discovered through such methods as looking through Sess's arrest records. But the fact remains that, before Sess gave his immunized testimony, the police apparently had no specific information about the incident where Sess planted the drugs, and the prosecution's investigation had not even begun. Also, the record is unclear as to whether either Seal or Ragan would have even known about the incident if they had been questioned by investigators. Under these circumstances, we cannot conclude that the discovery of Seal's and Ragan's identities would have been "inevitable." To hold otherwise, would be stretching the inevitable-discovery rule beyond its intent.[10] The third assignment of error is overruled, and the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

WINKLER, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

The chickens hatched by the Ohio Supreme Court in *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 555 N.E.2d 940, have come back to roost. They are roosting in our county, in our halls of justice. We cannot remove them—only the Ohio Supreme Court can shoo these particular chickens. I implore that court to undo the mischief created by *Jones* by accepting an appeal of this case and reversing its prior pronouncement. But, as a lower court, we must follow the present law.

I concur in the result reached, but write separately to address the immunity issue that the majority ignores. The majority holds that the statements were involuntary or coerced as a matter of law. But the statements were only *made* as a result of the "2.26" immunity conferred by the *Jones* case. Thus I believe we must first consider the issue of immunity.

In *Jones*, a police officer was being internally investigated for various alleged violations of her department's policies. After the officer initially refused to

---

10. See *Nix, supra*, at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387, fn. 4 ("inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification"); *State v. Pearson* (1996), 114 Ohio App.3d 153, 162, 682 N.E.2d 1077, 1082 ("The circumstances justifying application of this [inevitable-discovery] rule are most likely to be present if investigative procedures were already in place prior to the unlawful discovery of the evidence.").

answer certain questions, the investigators informed her that, while she could be administratively punished for not answering the questions, no evidence gathered in the investigation would be used against her in any subsequent criminal proceeding.[11] Ultimately, the Ohio Supreme Court held that the statements given by the officer were immunized. The court, citing the United States Supreme Court in *Garrity v. New Jersey*,[12] stated that the Fifth Amendment privilege against self-incrimination prevented public employees from being forced to choose between making incriminating statements and facing dismissal from their jobs.[13] The court then added, "Yet public employees can be required to answer potentially incriminating questions, so long as they are not asked to surrender their constitutional privilege against self-incrimination. * * * The privilege against self-incrimination is preserved because a statement by investigators that nothing said at the hearing can be used at a subsequent criminal proceeding effectively immunizes that testimony from later use by a prosecutor. Since use of these statements by the prosecution is barred, by definition no statement made in the hearing can be incriminatory."[14]

Here, in the 2.26 document, the investigators promised to Sess immunity similar to that arising in the *Jones* case. Based on the authority of *Jones*, which has not been overruled, I must reluctantly conclude that Sess's statements on April 24 were immunized. This case is not distinguishable from *Jones*, and, as a lower court, we are bound by the Ohio Supreme Court's mandate, which effectively gives the police the power to grant criminal immunity to its officers during administrative investigations.

I do not believe that police officers should have the power that they had here. It is a power with no basis in the Revised Code—a power that allows the police to protect fellow officers from prosecution, even in the face of grievous criminal wrongs by those officers. As Justice Douglas stated in a vigorous dissent in *Jones*, "[W]e are placing in the hands of those who are charged with the responsibility of enforcing the law the right to forgive those who may have broken the law. * * * The majority's result sanctions official lawlessness— lawlessness of the worst sort since the very people engaging in it are those whom we depend upon to enforce the law. If we permit this, who will watch the watchman?"[15]

---

11. *Jones, supra,* at 41, 555 N.E.2d at 942.

12. (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562.

13. *Jones, supra,* at 44, 555 N.E.2d at 945.

14. *Id.* (Citations omitted.)

15. *Id.* at 49, 555 N.E.2d at 950 (Douglas, J., dissenting).

Were the Ohio Supreme Court to reconsider *Jones*, it could fashion a rule that complies with the Constitution but still provides the safeguards envisioned by the statutory procedure [16] for the granting of immunity—that immunity can only be conferred by a judge, not a police officer. Some adjustment of the statutory law may also be in order. But the present situation—that the police may confer immunity for heinous crimes, including murder, rape and robbery, in an informal administrative investigation is intolerable.