DECISION AND JUDGMENT ENTRY
This is an appeal from: (1) a "JOURNAL ENTRY OF CONVICTION" filed in the Williams County Court of Common Pleas on February 14, 2000, in which the trial court accepted jury verdicts finding appellant, Jeffrey P. Corbett, guilty of four counts of sexual battery (violations of R.C.2907.03(A)(6)); and (2) a judgment entry filed on April 5, 2000, in which the Williams County Court of Common Pleas designated appellant a sexually oriented offender and sentenced appellant to concurrently serve prison terms of four years for each of the first three convictions and one-and-one-half years for his fourth conviction. Appellant has presented the following three assignments of error for consideration on appeal:
 "Assignment of Error No. 1: THE TRIAL COURT COMMITTED ERROR AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS WHEN IT PERMITTED THE STATE TO USE STATEMENTS HE MADE TO INVESTIGATORS.
 "Assignment of Error No. 2: APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO MAKE A TIMELY MOTION TO SUPPRESS.
 "Assignment of Error No. 3: APPELLANT WAS PREJUDICED AND DENIED A FAIR TRIAL WHEN THE STATE MADE REFERENCE TO SEXUAL MISCONDUCT IT COULD NOT PROVE AND DID NOT ATTEMPT TO PROVE."
Before we consider the arguments presented related to these assignments of error, we will first review the facts and procedure in this case.
The record shows that this case began on September 15, 1999, when the grand jury sitting in Williams County, Ohio, filed an indictment charging appellant with five counts of sexual battery and two counts of attempted sexual battery. On October 8, 1999, appellant entered not guilty pleas to all of the charges.
On January 21, 2000, the court entered a Nolle Prosequi on one count of attempted sexual battery, because the former inmate who alleged the attempted sexual battery that was the subject of that count was identified as a homicide victim. The case proceeded to trial on the remaining counts on February 7, 2000.
After the jury was selected, the prosecutor made an opening statement outlining the evidence he expected to present as to five counts of sexual battery. He explained to the jury that appellant was a former corrections supervisor at CCNO and that appellant was charged with engaging in sexual conduct with some former female inmates while he was working as a corrections supervisor and they were inmates at CCNO. The prosecutor then made the following statements without any objection raised by appellant's trial counsel:
 "There is one additional charge in the Indictment and it is simply attempted sexual battery, attempting sexual battery. And the victim in that case is a girl by the name of Alicia Kern. And there is one count. I will tell you right now, I don't know if we are going to have any evidence on that case or not, on this one here. I can't find her. We may be able to tonight or something, but I'm just telling you I may not have any evidence on this one here, the attempted one. But these other three are sexual battery cases."
When appellant's trial counsel presented an opening statement he made the following remarks relating to the charge the prosecutor indicated might not be pursued:
 "The missing potential victim, Alicia Kern, indicated that her incident took place after supper and later that night that Mr. Corbett came back into the dormitory again at 7:30 or so and in fact Mr. Corbett never worked that shift."
The state then began presenting witnesses, including the three former female inmates who testified that appellant forced them at various times to engage in either fellatio or vaginal intercourse. The state also called two former guards from CCNO and the investigator from CCNO who was assigned to check into the charges against appellant when they surfaced. At the close of the testimony, the state indicated to the trial court that it would not object to a judgment of acquittal as to the charge relating to the alleged victim Alicia Kern and that it would not present any evidence relating to that charge.
The testimony presented by witnesses called by the state spanned two days of trial. At the beginning of the second day of trial, appellant's trial counsel presented a motion in limine to the trial court. In the motion in limine, appellant's trial counsel asked the trial court to prevent the state from asking the investigator from CCNO about three statements appellant made to the investigator. Appellant's trial counsel argued that appellant's statements could not be used against appellant at trial because the statements were coerced. Appellant argued that the statements were coerced because he was a public employee when he made the statements, and he was subject to a contract provision that specified that he would be charged with insubordination and could lose his employment if he refused to answer direct questions related to his alleged wrongdoing while on the job.
The state argued in response that appellant's motion in limine was in actuality a motion to suppress that was not timely, since it was not raised before trial as required by Crim.R. 12. The state said that appellant had waived his right to challenge the use of the statements in question by not filing his motion in a timely manner. The state said that the statements were critical to its case against appellant, and that by filing the motion mid-trial, appellant was attempting to prevent the state from making an immediate appeal, pursuant to Crim.R. 12(J), from the trial court's ruling if the trial court chose to grant appellant's motion to suppress his statements. In the alternative, the state argued that appellant's statements were not coerced in this case because while appellant was given his Miranda warnings at the beginning of each interview to warn him that his statements could be used against him at trial, he was never warned that if he failed to answer the questions asked he would be charged with insubordination which could lead to his termination as an employee at CCNO.
The trial court denied the motion filed by appellant's trial counsel on the basis that the motion was actually an untimely motion to suppress. During the direct examination of the inspector from CCNO, the state did ask the inspector some questions relating to the statements appellant made to the investigator. The trial court admitted the inspector's answers over the continuing objection of appellant.
After the state rested, appellant presented a defense. First, he called another former guard at CCNO who testified about the patterns and practices appellant followed at work and why she believed appellant could not have committed any of the acts for which he was charged. Next, appellant took the stand to testify on his own behalf. He denied all the allegations made against him. On cross-examination, the state questioned appellant regarding some of the statements appellant made to the investigator at CCNO before criminal charges were filed against him.
At the close of appellant's defense, the trial court presented the case to the jury for deliberation, after dismissing the count relating to allegations raised by Alicia Kern. The jury returned verdicts finding appellant guilty of four counts of sexual battery, and not guilty of one remaining count of sexual battery. The trial court accepted the verdicts and subsequently sentenced appellant for his four convictions of sexual battery. Appellant then brought this appeal.
Appellant states that his first and second assignments of error are interrelated, and he presents his arguments in support of those assignments of error together. Likewise, appellee presents its responding arguments together. Accordingly, we will consider the first two assignments of error together.
In support of his first and second assignments of error, appellant first argues that the trial court erred when it allowed the state to use his statements made to the investigator at CCNO during trial. He contends that when existing precedent from the United States Supreme Court,Garrity v. New Jersey (1967), 385 U.S. 493, and from Ohio state courts, see, e.g. Jones v. Franklin County Sheriff (1990), 52 Ohio St.3d 40; andState v. Sess (1999), 136 Ohio App.3d 689, are applied to the facts in this case, it is clear that his statements were coerced and should have been excluded from evidence in any criminal proceedings brought against him. Appellant says that in the above cited cases, the courts consistently ruled that public employees can be required to answer potentially incriminating questions, as long as they are not asked to surrender their constitutional privilege against self-incrimination. However, appellant says, if a public employee is forced to answer potentially incriminating questions or face discipline and dismissal from employment, the statements made by the employee cannot be used against the public employee in a criminal trial.
Appellant says he was faced with such a dilemma in his case. He says that each time he was questioned by the CCNO investigator he was given his Miranda warnings, so he knew "that what he said could be used against him and [was] told that he did not have to answer questions." Appellant then asserts in his brief:
 "However, he also knew that as a public employee and pursuant to his union contract, he could be terminated for not answering questions. Thus, he was faced with the choice between, on the one hand, surrendering up his right against self-incrimination and, on the other hand, risking loss of his job."
In the alternative, appellant presents a second argument in support of his first and second assignments of error that he received ineffective assistance of trial counsel when his trial counsel failed to file a timely motion to suppress his statements. First, he says that the representation he received at trial fell below an objective standard of reasonable representation because no competent defense counsel would be unaware of the requirements of Crim.R. 12(B) that a motion to suppress be filed before trial.
Second, he says that his trial counsel's failure to make a timely motion to suppress was prejudicial to his case and was "of constitutional dimension." He says that the prejudice is clear since the motion brought by his trial counsel was denied as untimely, and since the evidence that was therefore admitted at trial was "vital to the success of the State's case." In support of that assertion, he points to the representations to that effect that were made by the prosecutor to the trial court during argument about the motion in limine.
The state responds that appellant's arguments about ineffective assistance of counsel are moot and should not be reached, because the trial court did not err in this case when it permitted the state to use "small parts" of appellant's three statements to the CCNO investigator during trial. The state acknowledges that appellant was given hisMiranda warnings before he made each of his three statements to the investigator at CCNO. However, the state asserts that there is nothing in the record to support appellant's assertion that he knew that as a public employee he could be subject to discharge for failing to answer the questions posed by the investigator. The state says appellant never testified to or proffered any evidence to show that he knew he could be disciplined or discharged if he refused to answer the investigator's questions or that he thought he was faced with a choice of losing his employment or waiving his Miranda rights.
The state acknowledges that there was a provision in appellant's employment contract with the state that specified that he could be required to answer direct questions about allegations of misconduct on the job. However, the state says that nothing in the record shows that appellant was ever told about that provision, or that the provision was ever applied to appellant in this case. The state says that the provision would not be triggered until appellant refused to answer questions and the investigator then warned appellant that he could be charged with insubordination and then discharged. The state says since appellant voluntarily waived his Miranda rights and answered all the questions asked him by the investigator, appellant was never warned that his failure to answer questions could result in charges or dismissal.
Further, the state says that the provision in appellant's employment contract contained language that required the state to inform appellant that if he was required to answer the questions or face disciplinary action, the statements he made could not be used against him in a court of law. The state says that since appellant was never ordered to answer the questions, he was never faced with a choice between losing his employment or waiving his constitutional right to refuse to make a self-incriminating statement. The state says, therefore, that the cases cited by appellant, that stand for the proposition that statements made by a state employee faced with the choice of losing employment or making self-incriminating statements must be barred from any subsequent criminal prosecution of the employee, do not apply in this case.
In the alternative, the state argues that appellant's assertion that he received ineffective assistance of trial counsel is not supportable. The state says that appellant's trial counsel ably represented appellant. The state further says that appellant's trial counsel probably concluded that a motion to suppress would be unsuccessful.
The state notes that appellant's trial counsel did proffer the contract provision that could have been triggered to place appellant in a dilemma of losing employment or of making self-incriminating statements, but says appellant's trial counsel was unable to proffer any evidence to show that appellant was aware of that contract provision when appellant was being questioned by the CCNO investigator. The state opines that since no such evidence existed, appellant's trial counsel chose to "spring" the objection during trial as a motion in limine in hope that the true nature of the motion would slip by the court and the court would exclude the statements on the assumption, without any specific testimony to that effect from appellant, that appellant was placed in a dilemma when he was questioned by the CCNO investigator. The state asserts, therefore, that appellant's trial counsel's actions were reasonable trial strategy.
The state also argues that the introduction of the statements did not prejudice appellant's trial. The state says that there was other sufficient evidence to support the convictions of appellant in this case for sexual battery. The state says that the jury only heard "a tiny portion" of appellant's statements to the investigator and that appellant has not shown how those portions prejudiced his case.
We begin by noting that the trial court never reached the merits of the arguments relating to whether appellant's statements made during the investigation were coerced or voluntary. Instead, the trial court concluded that the motion to exclude the statements made during trial was not a motion in limine, but was instead an untimely motion to suppress. On that basis, the trial court concluded that the motion to suppress must be denied. Appellant has not directly challenged the trial court's ruling on that basis as being in error. He has not argued that his motion was not a motion to suppress, that his motion was timely, or that the trial court abused its discretion when it denied his motion as untimely, implicitly ruling that he had waived any constitutional arguments relating to whether or not his statements were voluntary or coerced. Instead, he has argued that he would have prevailed on the merits if his counsel had only filed the motion to suppress in a timely manner, so he received ineffective assistance of trial counsel. Therefore, this court finds appellant's first assignment of error, which alleges that the trial court erred and violated appellant's constitutional rights when it permitted the state to use statements at trial that appellant made during the CCNO investigation, not well-taken.
We next focus our attention upon the arguments relating to whether appellant received ineffective assistance of trial counsel. The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, followed.)" State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
Because the Supreme Court of Ohio has specifically followed the ruling of the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, we are also guided by the reasoning discussed in that case. In Strickland v. Washington the United States Supreme Court indicated that when a court reviews counsel's performance "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In addition, due deference must be given by the reviewing court to legitimate trial strategy decisions. Id. Keeping these guidelines in mind, we have reviewed the arguments that were presented regarding whether appellant received ineffective assistance of counsel.
Even if we assume arguendo that the representation appellant received from trial counsel fell below an objective standard of reasonable representation when his trial counsel waived appellant's right to argue that his statements could not be used at trial because they were coerced, appellant has still not met the test for ineffective assistance of counsel until he can show that the waiver of his right prejudiced his case. Appellant has argued that if his motion had been presented to the trial court in a timely manner, he would have prevailed on the merits. The state has responded that appellant would not have prevailed on the merits because the cases cited by appellant do not support his argument that appellant's statements were coerced.
The seminal case cited by appellant in support of his proposition that his statements should have been barred from evidence as coerced isGarrity v. New Jersey (1967), 385 U.S. 493. In that case, several police officers were questioned about fixing traffic tickets as part of an investigation. The United States Supreme Court explained:
 "Before being questioned, each appellant was warned (1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office." Id. at 494. (Emphasis added).
The police officers answered the questions that were asked, and their answers were subsequently used against them when they were brought to trial on criminal charges. The officers objected to the introduction of their answers at trial, arguing that their statements were coerced. Id. at 495. On appeal, the United States Supreme Court agreed with the officers that their statements were coerced. The United States Supreme Court said:
 "The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in Miranda v. Arizona, 384 U.S. 436, 464-465, is `likely to exert such pressure upon an individual as to disable him from making a free and rational choice.' We think the statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions." Id. at 497-498.
The United States Supreme Court announced:
 "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." Id. at 500.
The two cases from the state of Ohio cited by appellant, Jones v.Franklin County Sheriff (June 20, 1990), 52 Ohio St.3d 40; and State v.Sess (1999), 136 Ohio App.3d 689, also involved public employees who were clearly told that they would lose their employment if they refused to answer questions during investigations into allegations that they engaged in misconduct. In the case decided by the Supreme Court of Ohio, a Deputy Sheriff from the Franklin County Sheriff's Department was investigated for being involved with vigilante activity while she was off-duty. Jonesv. Franklin County Sheriff, 52 Ohio St.3d at 40. The Supreme Court of Ohio specified that one of two pertinent questions before it in that case was: "[M]ust a police officer answer questions that relate specifically and narrowly to the performance of her official duties when the questions are asked in an Internal Affairs Division hearing and when the officer is guaranteed that the answers cannot be used against her in any subsequent criminal prosecution?" Id. at 42. The Supreme Court of Ohio answered its own question in the affirmative. In the text of the opinion, the court said:
 "The United States Supreme Court has consistently held that a public employee many not be forced to choose between making incriminating statements and facing dismissal, since such a choice would effectively negate the Fifth Amendment privilege against self-incrimination. D'Acquisto v. Washington (1986), 640 F. Supp. 594, 622, citing Lefkowitz v. Cunningham, supra; Gardner v. Broderick, supra. Yet, public employees can be required to answer potentially incriminating questions, so long as they are not asked to surrender their constitutional privilege against self-incrimination. Lefkowitz v. Cunningham, supra, at 806, citing Gardner v. Broderick, supra, at 278-279.
 "The privilege against self-incrimination is preserved because a statement by investigators that nothing said at the hearing can be used at a subsequent criminal proceeding effectively immunizes that testimony from later use by a prosecutor. Since use of these statements by the prosecution is barred, by definition no statement made in the hearing can be incriminatory. Thus, it has been held that the employee must answer these specific, narrowly tailored questions or face a possible dismissal for insubordination. Gardner v. Broderick, supra; Erwin v. Price (C.A.11, 1985), 778 F.2d 668, Donohoe v. Franklin Cty. Sheriff (June 7, 1988), Franklin Cty.App. No. 87AP-648, unreported; Hobbie v. Medina
(1985), 29 Ohio App.3d 306, 29 OBR 405, 505 N.E.2d 276." Id. at 44.
The Supreme Court of Ohio affirmed the trial court's ruling removing the deputy from office for refusing to answer the questions she was asked during the internal affairs investigation. Id. at 45.
The second Ohio case cited by appellant was decided by the First Appellate District Court of Ohio in 1999. State v. Sess (1999),136 Ohio App.3d 689. In the State v. Sess case, the state appealed a ruling by the trial court suppressing the statements the police officer defendant made during an internal affairs investigation. The officer had first asserted his Miranda rights. However, he later signed a document that contained provisions explaining that he was required to answer the questions or face dismissal from his employment, but that his answers could not be used against him in any subsequent related criminal proceeding. Id. at 691. The First District Court of Appeals said:
 "It is well settled that coerced statements are not admissible in a criminal prosecution. As recognized by the Supreme Court of the United States in Garrity v. New Jersey, n6 if a public employee is forced to make the Hobson's choice of answering questions that may incriminate him or of forfeiting his job, statements made pursuant to such questioning are not voluntary and cannot be used in a subsequent prosecution against the public employee. The prohibition against the use of statements in such cases is properly based, therefore, not upon the doctrine of immunity, but rather upon the firmly entrenched constitutional doctrine that coerced statements cannot be used against a defendant in a criminal case." Id. at 692.
The First District Court of Appeals affirmed the ruling of the trial court granting the police officer's motion to suppress his statements made during the internal affairs investigations.
The transcripts of the statements made by appellant during the investigation at CCNO were not admitted into evidence and are not part of the record on appeal. However, this court is able to confirm that appellant was given his Miranda warnings when he gave the statements because the CCNO investigator testified to that at trial. Furthermore, this court is able to confirm that a provision in appellant's employment contract did address a situation where he could be compelled to answer direct questions during an investigation, because the contract provision was admitted into evidence. The contract provision reads:
 "Before an employee may be charged with insubordination for failure to answer questions or for failure to participate in an investigation, he shall be advised that such conduct, if continued, may be the basis for such a charge that could lead to termination. If an employee is compelled to answer questions concerning allegations of wrongdoing upon penalty of termination for failure to answer, the employee must be informed that information provided as a result of such an order will not be used in a criminal proceeding. Failure to truthfully answer questions after such a warning may result in discipline, up to and including termination."
Our careful review of the record confirms the state's assertions that there is no evidence to show that appellant was ever aware of the above-quoted contract provision when he was being questioned by the investigator at CCNO or that he was ever faced with a "Hobson's choice" of losing his employment or waiving his Miranda rights. Neither appellant nor the investigator from CCNO ever testified that appellant refused to answer questions after he was given his Miranda warnings or that the investigator then advised appellant that if he refused to answer questions he could be disciplined and possibly discharged, but his statements then could not be used against him in a criminal proceeding.
We agree with the state, therefore, that the cases cited by appellant are not directly on point, since the record in this case fails to show that appellant was ever placed in a position where he was forced to waive his constitutional right not to make self-incriminating statements or to face dismissal from his employment. We also agree with the state that the facts available to this court in the current record do not support a finding that appellant's statements were coerced, since there is no evidence to show that he was ever told that if he refused to answer questions he would be subject to discipline and possible discharge. SeeMartin v. Maryland (1996), 113 Md. App. 190, 686 A.2d 1130; and Maine v.Graves (1994), 638 A.2d 734. Accordingly, based upon the record available to us, we cannot find that appellant was prejudiced by his trial counsel's failure to file a timely motion to suppress, and appellant's second assignment of error is not well-taken and is denied.
In support of his third assignment of error, appellant alleges that his case was prejudiced when the prosecutor referred, in his opening statement, to a count for attempted sexual abuse which the state never offered any evidence to prove. Specifically, appellant says he was prejudiced by the prosecutor's reference to the count based upon the allegations of Alicia Kern. He says that the jury could have used the reference to the unproved count to support a theory that "where there's smoke there's fire" and could have decided that the testimony they heard from the other alleged victims must be true, since another victim also existed who made similar allegations. He says that as a result of the prosecutor's remarks, he was denied a fair trial.
The state responds that the remarks made during the prosecutor's opening statement did not deprive appellant of a fair trial. The state points out that the jury was instructed more than once by the trial court that statements made during opening were not evidence. Furthermore, the state argues that this issue was waived for appeal because appellant did not object when the statements were made at trial. Finally, the state says that the jury verdicts show that the jury followed its instructions carefully, and were not swayed improperly by non-evidence presented through opening statements, since the jury found appellant not guilty of a count of sexual battery even though the prosecutor outlined the allegations supporting that count in great detail during opening, and the alleged victim took the stand and testified at trial.
Appellant's failure to object to the prosecutor's opening statements at trial waived all but plain error under Crim.R. 52(B) for purposes of appeal. See State v. Houseman (June 29, 2000), Belmont App. No. 98 BA 4, unreported. A plain error is an:
 "Obvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221 (quoting United States v. Atkinson (1936), 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391.
We find that the circumstances in this case do not rise to the level of plain error, since we agree with the state that there is nothing in the record to indicate that the jury failed to follow its instructions to consider only evidence presented at trial, and not to consider the opening statements of counsel as evidence. See State v. Houseman (June 29, 2000), Belmont App. No. 98 BA 4, unreported. Appellant's third assignment of error is not well-taken and is denied.
After reviewing the record and the arguments presented on appeal, we conclude that appellant was not denied a fair trial. The judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________ Peter M. Handwork, JUDGE
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.