[Cite as *State v. Haas*, 2021-Ohio-4346.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                    Court of Appeals No.  F-20-011

       Appellee                          Trial Court No.  20CR000009

v.

Shannon L. Haas                              **DECISION AND JUDGMENT**

       Appellant                         Decided:  December 10, 2021

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal filed by appellant, Shannon Haas, from the August 12, 2020 judgment of the Fulton County Court of Common Pleas, denying her motion to suppress.  For the reasons that follow, we affirm the trial court's judgment.

**{¶ 2}** Haas sets forth one assignment of error:

[Haas]'s statements made to both her supervisor and a sheriff's deputy were compelled in violation of the Fifth Amendment, pursuant to *Garrity v. New Jersey.*

## Background

**{¶ 3}** At all times relevant, Haas was a social worker at Fulton County Job and Family Services ("FCJFS"), employed as an ongoing worker responsible for Fulton County Children's Services ("FCCC") cases.

**{¶ 4}** On February 12, 2018, Haas signed a form entitled Confidentiality Agreement ("Agreement"). By signing the Agreement, Haas acknowledged that she read and understood FCJFS's procedure for confidentiality. The Agreement provided, inter alia, "[y]ou may not operate or permit operation of ODJFS [Ohio Department of Job and Family Services] or State Data Center equipment for personal business * * * [and] * * * [y]ou must report violation of confidentiality to their [sic] immediate leader."

**{¶ 5}** On May 7, 2019, Haas signed a form entitled Ohio Department of Job and Family Services Code of Responsibility ("Code"), representing that she had "read, underst[ood] and will comply with this ODJFS Code." The Code provided, inter alia:

Security and confidentiality are a matter of concern for all users of the * * * (ODJFS) information systems and all other persons who have access to ODJFS confidential data. Each person that is entrusted with an authorized

2.

ID to access ODJFS systems, holds a position of trust relative to this information and must recognize the responsibilities entrusted to him/her in preserving the security and confidentiality of this information. * * * An authorized user's conduct either on or off [of] the job may threaten the security and confidentiality of this information. It is the responsibility of every user to know, understand and comply with the following:

* * *

2. I will not make or permit unauthorized uses of any information maintained by ODJFS, regardless of the medium in which it is kept.

3. I will only access information about recipients of ODJFS benefits or services, or about ODJFS employees, that is collected and maintained on ODJFS or state computer systems for those purposes authorized by ODJFS, and as directly related to my official job duties and work assignments for, and on behalf of, ODJFS * * *.

* * *

8. I will not violate rules and/or regulations concerning access and/or improperly use security entry cards or codes for controlled areas.

* * *

10. I will immediately report any violation of this code of responsibility to my supervisor and/or the OIS Access Control Unit.

\* \* \*

**In addition to applicable sanctions under federal and state regulations, violations of this policy will be reviewed on a case-by-case basis and may result in disciplinary action up to and including removal.**

{¶ 6} In December 2019, Amy Metz-Simon, the Director of FCJFS, was contacted by the Director of Lucas County Children's Services ("LCCS"). Simon was advised Haas may have used the Job and Family Services computer system to access an allegation in an open case made against Haas and her family. Simon called Maurine Clymer, Haas's supervisor, and told Clymer to bring Haas to the conference room at FCCC for a meeting.

{¶ 7} Simon met with Haas and Clymer. Simon asked Haas if she had accessed her own children's services case through the State Automated Child Welfare Information System ("SACWIS" or "state system"). Haas denied doing so. Simon informed Haas that, according to Lucas County, Haas accessed the state system eight times. Haas then admitted she might have accessed the state system once.

{¶ 8} Clymer had not known Haas had an open investigation or that Haas had accessed the system. Clymer asked why Haas had not made her aware that there was an open investigation, and Haas responded she was afraid she would be fired and she knew the allegation was not true.

4.

{¶ 9} Simon stated she would follow up with administration in order to determine how to proceed. Simon was told county breaches of the state system had to go through local law enforcement, so ultimately, the Fulton County Sheriff's Office was notified.

{¶ 10} Deputy Matt Smithmyer of the Fulton County Sheriff's Office called Haas at FCJFS, and explained to her that he was made aware of the situation where information was accessed from the state system. He told Haas that he would like her to come and talk to him. On January 6, 2020, Haas arrived at the sheriff's office and Deputy Smithmyer advised her she was not under arrest, she was free to leave and she did not have to answer any questions. Haas was interviewed for twenty-five to thirty minutes by the deputy.

{¶ 11} On January 14, 2020, Haas was indicted by the Fulton County Grand Jury on two counts of unauthorized use of computer, cable, or telecommunication property in violation of R.C. 2913.04(B), fifth degree felonies. Thereafter, she pled not guilty.

{¶ 12} On June 8, 2020, Haas filed a motion to suppress statements. On July 27, 2020, the state filed a response. A hearing on the motion was held on August 5, 2020, and three witnesses were called to testify: Director Simon; Supervisor Clymer; and Deputy Smithmyer. On August 12, 2020, the trial court denied the motion to suppress.

{¶ 13} On August 20, 2020, Haas pled no contest to one count of unauthorized use of computer, cable, or telecommunication property in violation of R.C. 2913.04(B), a fifth degree felony. The trial court accepted the plea and found Haas guilty. On

5.

November 4, 2020, Haas was sentenced. Haas appealed the denial of her motion to suppress.

## Motion to Suppress

{¶ 14} In Haas's motion, she sought to have the trial court suppress the statements she made to her employer and to law enforcement, as she claimed the statements were taken in violation of her rights under *Garrity v. State of N.J.*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). She claimed her confessions were improperly secured in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as the confessions were not voluntary. In support, Haas cited to *State v. Sess*, 136 Ohio App.3d 689, 692, 737 N.E.2d 969 (1st Dist.1999), where the court stated:

> As recognized by the Supreme Court of the United States in *Garrity v. New Jersey*, if a public employee is forced to make the Hobson's choice of answering questions that may incriminate him or of forfeiting his job, statements made pursuant to such questioning are not voluntary and cannot be used in a subsequent prosecution against the public employee.

{¶ 15} Haas argued she was told, when she met with and was questioned by Director Simon, that if she did not cooperate, she would be placed on administrative leave and criminal charges were likely. Haas asserted she was never advised of her *Garrity* rights. Haas maintained she was directed by FCJFS to meet with Deputy Smithmyer and discuss the matter, and the deputy questioned her upon Simon's request.

6.

**{¶ 16}** Haas contended all of her statements to FCJFS should be suppressed and "all statements to law enforcement made upon direction by and with cooperation with her employer should be suppressed." Haas also cited to *State v. Gideon*, 3d Dist. Allen No. 1-18-27, 2019-Ohio-2482, 130 N.E.3d 357, ¶ 23-27 and 30 ("*Gideon I*").

### Trial Court's Decision and Order

**{¶ 17}** In its August 12, 2020 decision and order, the trial court set forth the following findings and conclusions.

**{¶ 18}** Haas was a public employee with Job and Family Services who stood accused of illegally accessing secured files.

**{¶ 19}** At the hearing on the motion to suppress, Haas presented no witnesses and the state presented three witnesses. The witness testimony indicated a Lucas County Job and Family Services representative conducted an investigation involving Haas, and Haas provided information to Lucas County which she could not have known without inappropriately accessing files while at work. Lucas County alerted Director Simon, who was concerned Haas had violated protocol in accessing the files or someone may have accessed Haas's computer or password, which was a breach of security.

**{¶ 20}** Simon testified she met with Haas and Supervisor Clymer, and Haas admitted she accessed the file once. Simon testified she did not indicate at any time that Haas was required to answer questions or that Haas would lose her job or be disciplined. Simon did not know the proper procedure for an infractions of rules and indicated there

7.

may be some disciplinary action, but the discussion was not made with any threat relating to Haas's cooperation

{¶ 21} Clymer testified she was not told why Haas needed to be in the office. Clymer did not indicate to Haas that Haas needed to talk about what happened or Hass would lose her job.

{¶ 22} Deputy Smithmyer testified he was informed of Haas's action and conducted at investigation. He requested that Haas come to his office to make a statement. Before she made a statement, the deputy told Haas she could leave at any time, and at no time did the deputy indicate that she would be subject to any discipline if she failed to cooperate with the investigation.

{¶ 23} During cross-examination of the witnesses, Haas introduced as exhibits the Agreement and the Code.

{¶ 24} The trial court set forth Haas's "arguments during the hearing seem to suggest as [Haas] signed [the Agreement and the Code], she must have been aware of the potential for disciplinary action, including termination, if she did not cooperate. Therefore, her statements were coerced and should be suppressed." The court observed that *Garrity* requires that statements made by public employees under duress must be suppressed, and if no express threat was made, statements are considered compelled by threat of discharge if a person subjectively believed she would be fired for asserting the

8.

privilege, and that belief must be objectively reasonable under the totality of the circumstances.

{¶ 25} The trial court found there was no express threat in Haas's case. The court further found it had no way of knowing whether Haas was aware of the potential for disciplinary action, including termination, if she did not cooperate when she made any of her statements because Haas exercised her right not to testify at the motion hearing. Thus, the court examined the totality of the circumstances to determine whether Haas's statements were coerced. The court set forth:

> If the Court were to determine the mere signing of [the Agreement and the Code] constituted grounds for a subjective belief by any Defendant that they would be terminated if they did not make a statement, then every statement by a public employee would be subject to suppression under *Garrity*. That is not the ruling in *Garrity*.
>
> The mere signing of the documents by [Haas] at the time she began her employment with this agency does not provide the Court with circumstances sufficient to form an opinion [that] * * * [Haas] had a subjective belief she would be terminated if she did not cooperate in an investigation. There was no other evidence presented to assist the court in that regard.

{¶ 26} The trial court denied the motion to suppress.

9.

**Assignment of Error**

{¶ 27} Haas argues her statements to Director Simon and Deputy Smithmyer were compelled in violation of the Fifth Amendment, pursuant to *Garrity*.

{¶ 28} Haas cites to *State v. Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 21, in support of the assertion that if a public employer compels statements from an employee through threat of termination if the employee does not cooperate, the statements cannot be used in a subsequent criminal case.

{¶ 29} Haas observes the trial court denied her motion to suppress, finding her statements were not compelled or coerced. And, the court found no one had expressly threatened her with job termination if she did not cooperate. Haas notes the court found it could not know her subjective state of mind because she did not testify, and the court also found, considering the Agreement and the Code, she could not have had a subjective belief that she would be terminated.

{¶ 30} Haas argues the trial court misconstrued the law, as "[a] threat of employment termination need not be expressly communicated. *Garrity* still applies if the employee had a subjective belie[f] that was objectively reasonable considering the totality of the circumstances. *Graham* at ¶ 24; *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961," ¶ 15 ("*Gideon II*"). Haas contends "[i]n *Graham*, as here, the defendant did not testify at the suppression hearing," and the *Graham* court "found a notice given to defendants dispositive * * * and sufficient for the Court to conclude that

defendants had a subjective belief they would be terminated for non-cooperation, and that belief was objectively reasonable."

{¶ 31} Haas submits "*Graham* dictates a conclusion that the trial court erred in finding [the Agreement] and [the Code] were insufficient to cause Haas' [sic] to believe that she 'could' be fired for refusing to cooperate." And, the trial court erred in concluding Haas's subjective state of mind could not be ascertained because she did not testify, as the *Graham* defendant did not testify. Haas also claims "as in *Graham*, [the Agreement] and [the Code] represent 'some demonstrable state coercion above the general directive to cooperate.'"

{¶ 32} Haas maintains the Agreement and the Code should suffice to find she had a subjective belief that she could be terminated for refusing to cooperate, "especially in light of Clymer's testimony that Haas said that she believed she would be fired." Haas insists "her belief was objectively reasonable under the circumstances. ODJFS directly communicated to her that job termination may result from violations."

**Law**

***Garrity v. New Jersey***

{¶ 33} The appellants were police officers in New Jersey who were questioned by the state's attorney general during the course of an investigation concerning the alleged fixing of traffic tickets. *Garrity*, 385 U.S. at 494, 87 S.Ct. 616, 17 L.Ed.2d 562. "Before being questioned, each appellant was warned (1) that anything he said might be used

against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office." *Id.* Each appellant answered questions and some of the answers were used in subsequent prosecutions, over appellants' objections that their statements were coerced "by reason of the fact that, if they refused to answer, they could lose their positions with the police department." *Id.* Appellants were convicted, and on appeal, the voluntariness of the statements was at issue. *Id.* at 495-496.

{¶ 34} Ultimately, the case reached the Supreme Court of the United States which held "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all * * * members of our body politic." *Id.* at 500.

### *State v. Graham*

{¶ 35} The appellants were employees of the Ohio Department of Natural Resources ("ODNR") who were interviewed during an investigation conducted by the Ohio inspector general. *Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 2, 4. "Prior to the questioning, each appellant signed an oath [or notice] that included the following statement: 'I understand that by affirming my truthfulness under oath, I am subject to criminal sanctions if I provide false information.'" *Id.* at ¶ 4. None

12.

of the appellants was advised of the right to counsel before the interview. *Id.* Each appellant was subsequently indicted and "filed motions to suppress or, alternatively, dismiss, on the ground that their statements * * * were coerced by threat of job loss and were therefore inadmissible under *Garrity*." *Id.* at ¶ 10. The trial court suppressed the statements finding they were compelled and thus, inadmissible. *Id.* at ¶ 14. The court of appeals reversed and decided "in the absence of any express threat, appellants had not been compelled within the meaning of *Garrity*." *Id.* at ¶ 15.

{¶ 36} The Supreme Court of Ohio noted "[c]ompulsion within the meaning of *Garrity* is obvious in cases in which, as in *Garrity*, the state has expressly confronted the public employee with the inescapable choice of either making an incriminatory statement or being fired." *Id.* at ¶ 23. However, when there is no express threat, the court held "for a statement to be suppressed under *Garrity*, the employee claiming coercion must have believed that his or her statement was compelled on threat of job loss and this belief must have been objectively reasonable." *Id.* at ¶ 24. The court observed that "[d]etermining whether an employee's subjective belief was objectively reasonable requires a court to examine the totality of the circumstances * * * [and] [t]he circumstances must show some demonstrable coercive action by the state beyond '[t]he general directive to cooperate.'" (Citation omitted.) *Id.* at ¶ 23. The court explained "'ordinary job pressures, such as the possibility of discipline or discharge for insubordination, are not sufficient to support an objectively reasonable expectation of discharge.'" (Citation omitted.) *Id.*

13.

{¶ 37} The Supreme Court further held "[i]n examining whether an employee's belief was objectively reasonable under the circumstances, evidence of an express threat of termination or a statute, rule, or policy demanding termination will almost always be sufficient to show coercion." *Id.* at ¶ 24. The court concluded "the express threat in the ODNR notice was sufficiently coercive so as to trigger the protections of *Garrity* * * * [as] [a]ppellants answered questions after receiving a warning that they could be fired for failing to do so. Statements extracted under these circumstances cannot be considered voluntary within the meaning of *Garrity*." *Id.* at ¶ 29-30.

### *Gideon I*

{¶ 38} Gideon was a licensed physician who was investigated for inappropriately touching patients. *Gideon*, 3d Dist. Allen No. 1-18-27, 2019-Ohio-2482, 130 N.E.3d 357, ¶ 2. The investigation was undertaken by a law enforcement officer and an investigator with the State Medical Board, who agreed to cooperate with each other and trade information. *Id.* at ¶ 2-3. Gideon denied the patients' allegations when questioned by the officer. *Id.* at ¶ 3. The investigator told the officer that he, the investigator, would interview Gideon, and the investigator warned the officer against participating in the interview because Gideon "was statutorily obligated to cooperate with his investigation - so that any confession could be used in a criminal proceeding against [him]." *Id.* at ¶ 3. The investigator interviewed Gideon at his medical office, and "[c]ommensurate with his duty to cooperate and provide truthful answers to [the] [i]nvestigator['s] questions,

Gideon provided [the] [i]nvestigator with an oral and written statement." *Id.* at ¶ 4. The investigator shared the statements with the officer. *Id.*

{¶ 39} Gideon was charged with several crimes. *Id.* at ¶ 5. He filed a motion to suppress evidence, requesting his statements to the investigator be suppressed because they were involuntary and elicited in violation of his due process right and privilege against self-incrimination. *Id.* at ¶ 6. The trial court denied the motion finding Gideon "'made voluntary statements during a noncustodial interview.'" *Id.*

{¶ 40} The court of appeals reversed, concluding Gideon's statements were not voluntary as the investigator's actions created the impression that Gideon's "refusal to cooperate with his investigation would result in the type of penalty prohibited under *Garrity*." *Id.* at ¶ 51. The appellate court further concluded Gideon's "belief that his medical license would be penalized if he did not cooperate with [the] [i]nvestigator['s] investigation was objectively reasonable." *Id.*

### *Gideon II*

{¶ 41} The Supreme Court of Ohio, in reversing the court of appeals, noted "[u]nlike the officers in *Garrity*, Gideon is not a public employee. He was a medical doctor in private practice * * * subject to licensure by the state medical board * * * [and his] medical license constitutes a liberty and property interest subject to due-process protections." *Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 12. The court observed "[t]he medical board has disciplinary authority over medical doctors and may 'limit,

15.

revoke, or suspend a license or certificate to practice * * *.' R.C. 4731.22(B)." *Id.* at ¶ 13. And "[a]mong the reasons listed for exercising the authority to impose such sanctions is the '[f]ailure to cooperate in an investigation' and the 'failure to answer truthfully a question presented by the board in an investigative interview * * *.'" *Id.* And further "[t]he state's threat to impose a legal penalty for the failure to give truthful responses in a state-medical-board investigation is coercive." *Id.* at ¶ 14.

{¶ 42} The court, citing *Graham*, noted Gideon was not "'expressly confronted * * * with the inescapable choice of either making an incriminatory statement or being fired.'" *Id.* at ¶ 15. The court applied the *Graham* test and held Gideon "did not establish through evidence that coercive action by the * * * investigator had occurred. The trial court found no evidence that the * * * investigator informed Gideon that 'he must waive his rights against self-incrimination or subject himself to discharge or revocation of his license.'" *Id.* at ¶ 18. Neither Gideon nor the investigator stated or suggested during the interview that Gideon "could lose his medical license if he refused to comply with the investigator's questioning." *Id.*

{¶ 43} The Supreme Court concluded:

Gideon's medical license is a property right and that the threatened loss of the license is a form of coercion that can compromise the * * * privilege against self-incrimination. That said, in order for coercion to be sufficient to warrant the suppression of statements Gideon made during a medical-

board investigative interview, his belief that he would lose his license if he failed to participate in the * * * interview and answer questions truthfully must be both subjectively believed and objectively reasonable. In this case, based on our independent, de novo review of the facts and circumstances under which the investigator interviewed Gideon, we conclude that Gideon's belief that a refusal to answer truthfully questions posed by the medical-board investigator could lead to the loss of his medical license was not objectively reasonable. We find, therefore, that Gideon has failed to satisfy the legal standard established in *Graham*. *Id.* at ¶ 24.

## Standard on Appeal

{¶ 44} Appellate review of a Crim.R. 12(C)(3) motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court decides a motion to suppress, it assumes the role of trier of fact and is in the best position to resolve questions of fact and to assess witness credibility. *Id.* A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8. An appellate court must then independently decide as a matter of law whether the trial court's conclusions satisfy the appropriate legal standard. *Id.*

17.

**Analysis**

{¶ 45} Upon review, we find the trial court did not err in denying Haas's motion to suppress. Our examination of the record, including the Agreement, the Code and the witness testimony from the suppression hearing, supports a conclusion that the trial court's findings of fact are based on competent, credible evidence. The trial court found there was no express threat of discharge, and the evidence supports this finding. Haas was not advised that she would face termination if she refused to answer her supervisors or law enforcement's questions or failed to cooperate with them, nor did the Agreement or the Code state that an employee would be fired if the employee failed to cooperate with an investigation or declined to answer questions.

{¶ 46} Having accepted the trial court's facts as true, we apply the *Graham* test to determine whether Haas subjectively believed her statements were compelled on threat of discharge, and whether this belief was objectively reasonable such that Haas's statements should be suppressed under *Garrity*.

{¶ 47} Upon review, we find Haas did not demonstrate, through evidence, that any coercion occurred. While Haas asserted the Agreement and the Code "especially in light of Clymer's testimony" should suffice to establish that she had a subjective belief that she could be terminated, we find none of the forgoing provides sufficient proof that Haas subjectively believed she could be fired for refusing to cooperate with her supervisors and law enforcement. We note the Code states that "violations of this policy will be

18.

reviewed on a case-by-case basis and may result in disciplinary action up to and including removal," but neither the Agreement nor the Code mentions or alludes to the subjects of investigations, questioning, cooperating or refusing to cooperate. *Contra Graham* at ¶ 27 ("[a]lthough appellants did not testify at the suppression hearing, the threat of discharge contained in the notice was sufficient proof that they subjectively believed they could be fired for refusing to cooperate").

{¶ 48} We further find Clymer's testimony does not lend support to or reinforce Haas's assertion that she had a subjective belief that she could be fired for refusing to cooperate. Clymer testified that "[w]e asked her [Haas] about, I was not even made aware by her that she had an open investigation. So we asked, you know, why she didn't say anything, why she didn't tell us? And she said she was afraid that she would be fired. And that she knew it wasn't true because she knew who -that it wasn't even reported by the school." Clymer's testimony, that Haas was afraid she would be fired, referred to Haas having an open investigation with children's services, not Haas refusing to cooperate or answer questions regarding improperly accessing the state system.

{¶ 49} Upon review of the totality of the circumstances, we find no evidence that Haas's belief that her statements were compelled on threat of job loss was objectively reasonable. The Agreement sets forth that violations of confidentiality must be reported to a leader and the Code provides that violations must be reported to a supervisor. We find these documents are not sufficient to support an objectively reasonable expectation

19.

of discharge, as the clauses do not intimate that an employee would be disciplined or removed if the employee did not cooperate with an investigation or answer questions. Moreover, there is no witness testimony sufficient to support an objectively reasonable expectation of discharge, as no witness testified that Haas was told she would be reprimanded or fired if she refused to cooperate. Since the circumstances show no demonstrable coercive action by the state, we conclude Haas's statements were not compelled under *Garrity*. Accordingly, Haas's assignment of error is not well-taken.

{¶ 50} The judgment of the Fulton County Court of Common Pleas is affirmed. Appellant, Shannon Haas, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.           _____
                                          JUDGE
Gene A. Zmuda, P.J.         

Myron C. Duhart, J.            _____
CONCUR.                                         JUDGE

_____
                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.