THE STATE OF OHIO, APPELLANT, *v.* PERKINS, APPELLEE.

[Cite as State *v.* Perkins (1985), 18 Ohio St. 3d 193.]

(No. 84-1490—Decided July 17, 1985.)

194

*John T. Corrigan,* prosecuting attorney, *David J. Modic* and *George J. Sadd,* for appellant.

*Russell R. Kirtz,* for appellee.

HOLMES, J. Since the trial court's ruling on the motion to suppress in the case *sub judice,* the Supreme Court has adopted the ultimate or inevitable discovery exception to the Exclusionary Rule in *Nix* v. *Williams* (1984), ___ U.S. ___, 81 L. Ed. 2d 377. The prosecuting attorney herein, on behalf of the state of Ohio, petitions this court to recognize the exception and hold it applicable to the facts before us. While a majority of the appellate court below failed to address the *Nix* holding, we believe the prosecutor's request is warranted under the facts as presented.

The Exclusionary Rule has historically applied to illegally obtained evidence as well as any evidence which was an indirect product of unlawful police conduct. *Silverthorne Lumber Co.* v. *United States* (1920), 251 U.S. 385; *Wong Sun* v. *United States* (1963), 371 U.S. 471. The rule has not only applied to Fourth Amendment cases but also to Fifth and Sixth Amendment violations. See *Murphy* v. *Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52; *United States* v. *Wade* (1967), 388 U.S. 218. The deterrence rationale behind the principle is the refusal to put the prosecution in a better position than it would have been in the absence of illegality. *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383].

One of the well-recognized exceptions to the Exclusionary Rule is that of the independent source doctrine. This exception allows admission of evidence that has been discovered by means entirely independent of any constitutional violation. See *Murphy, supra; Kastigar* v. *United States* (1972), 406 U.S. 441. By endorsing this concept, the judiciary has acknowledged society's competing interests: deterring unlawful police

conduct and having juries receive all relevant evidence concerning the crime. In light of the rationale behind the Exclusionary Rule, these competing interests can be properly balanced only if the prosecution is put in the same, but not worse, position had the misconduct not occurred. Therefore, the tainted evidence is admissible under the exception if it was discovered by independent lawful means.

The Supreme Court was again confronted with these competing interests when it was asked to adopt the ultimate or inevitable discovery exception in *Nix, supra.* The facts of *Nix* centered on the remand of the "Christian burial speech" case of *Brewer* v. *Williams* (1977), 430 U.S. 387. The case involved the disappearance of a ten-year-old girl in Des Moines, Iowa. The accused, Robert Williams, thereafter surrendered to police in Davenport, Iowa, some one hundred sixty miles from the abduction site. In the meantime, an extensive search for the girl was conducted by two hundred volunteers which, at the time of Williams' arrest, had been unsuccessful.

The Davenport police booked the accused and read him the required *Miranda* warnings. Williams then had a telephone conversation with his attorney who informed him that the police would take him back to Des Moines for questioning and that he was not to answer any query concerning the incident until counsel was present. Williams' attorney was also assured by law enforcement officials that no interrogation would take place until the accused reached his destination.

However, during the return trip, one of the transporting officers initiated a conversation which, among other things, included a statement to the effect that the body of the girl should be given a Christian burial. This conversation ultimately led to Williams' showing the officers where the girl's body was located. Williams was subsequently found guilty of murder. The United States Supreme Court affirmed the reversal of the conviction, and held that Williams had been denied his right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments in that the officer deliberately elicited incriminating information from the accused during isolation from his attorney.

On remand, the prosecution did not offer into evidence Williams' statements or the fact that he directed police to the child's body. However, evidence concerning the condition of her body as it was found, as well as photographs and articles of clothing, was admitted during the second proceeding. The trial court admitted this evidence upon the factual finding that had Williams not led police to the body, the search party would have discovered it within a relatively short period of time and essentially in the same condition as it was actually found.

The Supreme Court on appeal, by balancing the competing societal interests mentioned above, adopted the ultimate or inevitable discovery exception and held, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been

discovered by lawful means * * * then the deterrence rationale has so little basis that the evidence should be received." *Nix, supra,* at 387-388. Once again, the court reasoned that the prosecution should not be placed in a worse position at trial because of some earlier police misconduct when the evidence gained would have ultimately been found in the absence of such misconduct. While the Exclusionary Rule is used to deny the admission of evidence unlawfully gained, and thereby to put the state in the same position it would have been absent the evidence seized, the rule should not be used to put the state in a worse position by refusing evidence that would have been subsequently discovered by lawful means. In addition, we note that the ultimate or inevitable discovery exception acts to forgive the constitutional violation made in gaining the evidence, as the Supreme Court ruled that the prosecution is not required to prove the absence of bad faith on the part of law enforcement officials in obtaining the evidence. *Nix, supra,* at 388-390.

It is our conclusion to follow this rationale and hold that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct.

Turning to the facts before us, in that there is a question as to whether there was an unlawful search and seizure of the gun, we must remand the case to the trial court for a factual determination as to whether the gun seized was in plain view of the investigating officers. If so, the information derived from the unlawful custodial interrogation of appellee concerning his previous arrest record will be admissible as such information was ultimately discovered by Sergeant Lauerhass who verified it by radio communication with police dispatch personnel. Based upon this evidence, appellee could then be found guilty of the unlawful possession of a firearm in violation of R.C. 2923.13. It would also follow that the finding of the narcotic drugs was justified as a result of the pat-down search incident to a lawful arrest.

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.