[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant Jeffrey D. Israel appeals from his conviction and sentence for Possession of Cocaine, following a no-contest plea. Israel contends that the trial court erred by denying his motion to suppress evidence. We conclude that the trial court properly denied the motion. Accordingly, the judgment of the trial court is Affirmed.
 I
On March 1, 1999 at about 11:30 p.m., Dayton police officer Roger Kielbaso was dispatched to investigate an alleged burglary. Kielbaso arrived just as defendant-appellant Jeffrey Israel was leaving. Israel initiated contact with Kielbaso, told Kielbaso that Israel lived there, and that someone had kicked in his door.
Kielbaso obtained Israel's permission to enter the residence, along with Israel. The residence was in disarray. At this point, Kielbaso was investigating a possible burglary, and was looking to see if anything was missing, broken, or out of place. While looking in a bedroom, Kielbaso saw a chest of drawers, with one drawer wide open. In the drawer, Kielbaso saw, in plain view, a large bag of what appeared to him to be crack cocaine. Kielbaso testified that he had been involved in between 800 to 1,000 situations where persons were found to be carrying crack cocaine.
Kielbaso did not say anything at this time, because he did not want to confront Israel until a back-up officer had arrived. Kielbaso testified that he had had experience with persons who carry or deal in crack cocaine possessing weapons, and was afraid for his safety. He testified that he did not want to start a fight with Israel before his back-up had arrived, because there might have been a weapon on Israel's person or somewhere within the residence, which was in disarray.
After another officer arrived, Kielbaso told Israel that he wanted to pat him down, and conducted a limited, pat-down search for weapons. During this search, Kielbaso saw some plastic baggies protruding from Israel's right jacket pocket:
 Q. And did you observe or find anything in the course of this pat down of the outer garments of Mr. Israel?
 A. I did. As soon as he raised his hands up and I started with my pat down, I saw some baggies protruding from his right jacket pocket.
 Q. And can you describe the appearance of those particular baggies?
 A. Well, they were plastic. They seemed to have, they weren't completely clear. They seemed like they had some type of a residue on them. I wasn't real sure because of the lighting. They were just protruding out of the pocket.
 Q. Did that cause you any concern or beliefs at that time?
 A. At that point I believed that most likely contained suspected crack cocaine.
 Q. Why did you form that particular belief, sir, on what basis?
 A. Because I already found two bags in the drawer, both of them containing crack cocaine, both like or similar to the baggies that were protruding out of his pockets.
 Q. Had you ever seen that kind of a condition with regard to other individuals you arrested for possession of crack cocaine?
A. I have.
Q. And that condition being what, sir?
 A. That crack cocaine is usually found in baggies when they're transported.
Q. What type of baggies?
A. Plastic baggies.
Kielbaso removed the baggies from Israel's right jacket pocket, and saw several rocks of suspected crack cocaine inside one of them.
Israel was arrested and charged with Possession of Cocaine. He moved to suppress evidence, contending that it was obtained unlawfully. Following a hearing, the trial court denied his motion to suppress. Thereafter, Israel pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Israel appeals.
 II
Israel's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE GAINED IN VIOLATION OF HIS RIGHTS PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
Israel first contends that the evidence in the record suggests that Kielbaso had no legitimate fear for his safety before conducting an illegal pat down search. We note that Israel did not make this argument to the trial court in his post-hearing memorandum in support of his motion to suppress. In any event, we are not persuaded by this argument.
Kielbaso testified that he was concerned for his safety when he discovered a large amount of crack cocaine in a drawer in Israel's bedroom. Kielbaso testified that he had had experience with persons who are found to have crack cocaine on or about their persons also carrying weapons, which he said had included anything from knives to guns. Kielbaso was in Israel's residence, which was in complete disarray. Kielbaso testified that he was concerned that there could be a weapon either on Israel's person, or within the residence, but not visible because of the disarray.
Under these circumstances, we are satisfied that Kielbaso had a legitimate fear that Israel might be armed, justifying a limited, pat-down search for weapons. State v. Evans (1993),67 Ohio St.3d 405, 413.
Israel next argues that the "evidence supports the conclusion that the illegal, warrantless search at issue was expanded as a pretext to search for contraband." As we understand this argument, Israel contends that even if the pat-down was a legitimate search for weapons, Kielbaso's pulling the baggies out of Israel's pocket exceeded the permissible scope of that search.
From the record, it is clear that Kielbaso saw the baggies protruding out of Israel's pocket during the pat-down search for weapons. The crucial issue here is whether Kielbaso had probable cause to believe that the baggies contained crack cocaine.
We agree with the trial court's conclusion that Kielbaso did have probable cause to believe that the plastic baggies he saw on Israel's person contained crack cocaine. Kielbaso was aware that plastic baggies are frequently used to transport crack cocaine, and he had seen similar baggies in Israel's bedroom, containing what appeared to him to be crack cocaine. Under these circumstances, we agree with the trial court that Kielbaso had probable cause to believe that the baggies he saw on Israel's person contained crack cocaine.
Israel next argues that the plain view exception to the warrant requirement requires that it be immediately apparent to the police officer that the item observed in plain view may be evidence of a crime. If Israel is arguing that Kielbaso needed more than probable cause to believe that the baggie he saw contained crack cocaine, we reject that argument. Israel, himself, cites Arizona v. Hicks (1987), 480 U.S. 321, 326-328 for the proposition that probable cause, not more, is required to seize an object found in plain view. We have indicated, above, why we agree with the trial court that Kielbaso had probable cause to believe that the plastic baggies he saw on Israel's person contained crack cocaine.
Furthermore, Kielbaso's testimony indicates that his conclusion that the plastic baggies had crack cocaine in them was immediate.
Finally, we agree with the State that discovery of the crack cocaine in the plastic baggies found on Israel's person was inevitable, anyway. Evidence obtained illegally is nevertheless properly admitted in a criminal proceeding if it can be established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation.State v. Perkins (1985), 18 Ohio St.3d 193.
In view of the crack cocaine found in Israel's bedroom, it is clear that Israel was going to be arrested and charged with possession of crack cocaine, and that the plastic baggies on his person would have been discovered in the course of a search incident to that arrest.
Israel's sole assignment of error is overruled.
 III
Israel's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.