OPINION
Pursuant to R.C. 2945.67 and Crim.R. 12(J), the State is appealing from the decision of the trial court to suppress evidence seized from Brian Anthony Jamison. Jamison's motion to suppress involved two seizures following two arrests on different dates, but we are concerned in this appeal only with the seizure on the first date, January 11, 2000.
The facts and the reasoning of the trial court are clearly set forth in its opinion as regards the January 11, 2000 arrest, the relevant portions which are set forth below:
 FACTS RELATING TO JANUARY 11, 2000 ARREST Officer Pauley of the Dayton Police Department and Officer Eric Kleinhass were dispatched to 539 Groveland Avenue in Dayton on January 11, 2000. A woman called in reporting a threat of a shooting. The Groveland Avenue Address is in Hilltop Homes. Hilltop Homes is an area with a reputation for having frequent drug offenses and acts of violence, based upon the experience of Officer Pauley. The report was that a black male had threatened to shoot the caller and another woman.
 When Officer Pauley went to that address he saw no activity outside the property or across the street from it. They then received a call from another officer, Officer Huber, who said that the two women who had made the complaint had stopped his cruiser on Dearborn Avenue where he had been en route to the Groveland address. Huber told Pauley that the black Oldsmobile supposedly being used by the person making the shooting threat had been seen on Dearborn Avenue. Officer Huber was approached by the two women who made the call about the shooting threat. The two women were hysterical. One said she had called the police about a threat of a shooting. She asked Officer Huber to follow him in his cruiser to try to find the Oldsmobile, and they went to Groveland Avenue. He radioed to Officer Pauley that he was with the complaining witness in separate cars. On Groveland, the lady stopped her vehicle and pointed to a black Oldsmobile 88 that had just pulled away from the curb. The lady told Huber that that was the car of the person who had made the threat.
 The vehicle turned onto Dearborn from Groveland. Huber followed it onto Dearborn where the driver pulled over to the curb. A woman got out of the black Oldsmobile. Huber told the driver to sit where he was in the vehicle. Then Officer Pauley came up, got out, and contacted the driver. He brought the driver to Huber's cruiser and got the other occupants out of the vehicle, because the police were checking for a suspect who had weapons. Officer Pauley went to Dearborn Avenue and saw a black Oldsmobile, in which four (4) people were seated. The trunk was open and Mr. Jamison, in the rear seat, was hunched over. The vehicle was not legally parked. It was 2~ to 3 feet out into the street away from the curb.
 Officer Pauley saw the black Oldsmobile, and blocked the car from moving forward and told the occupants to show their hands. He got the defendant Brian Jamison out of the vehicle and asked him for identification. Defendant did not have any identification. The officer patted Mr. Jamison for weapons for his own safety purposes and felt a hard plastic object approximately 3 inches by 1~ inches, which the Officer believed to be a plastic identification card. He knew it was not a weapon, but thought it might be an identification card. The officer extracted the object from the man's pants and found that it was a State Identification card identifying Brian Jamison. The description matched the appearance of the driver. Pauley ran the name and identifiers on his in-cruiser computer and learned that Brian Jamison was a subject of two arrest warrants and had no driving privileges.
 Officer Huber saw a bag with what looked like marijuana on the armrest of the black Oldsmobile. He told Jamison that he had an arrest warrant and he was being arrested. He did an inventory search of the black Oldsmobile, and found a telephone which he put in the trunk. Defendant Jamison said the vehicle belonged to him and he wanted it to be given to his wife when she came, so she could drive it home.
 Officer Huber arrested the defendant for the warrant, not for the marijuana he saw in the car. Then he searched the vehicle, finding a weapon and drugs in the car. He did the search pursuant to the City of Dayton Inventory and Towing Policy which requires that an inventory of the contents of every vehicle that is going to be towed be conducted before the towing. A copy of the policy was submitted by the prosecutor after the hearing and is admitted as State's exhibit.
 The other two occupants of the vehicle did not have a driver's license, so they were not permitted to drive the vehicle. Therefore, towing the car was authorized under the Dayton policy.
 Officer Pauley had the driver get out of the vehicle because he believed based upon the information from the caller that he was a suspect who was armed with a weapon and had made a threat to the women. Officer Huber inventoried the entire vehicle including the trunk, pursuant to the Dayton Police Inventory and Towing Policy (Para. IV (B)(1)). He saw a gym bag in the trunk and the side pouch of the gym bag had a gun and a bag of cocaine in the pouch. Inside the bag was a gas mask and a scale and a calculator.
 About this time the woman who had called in and who had stopped Huber on the other street came up to the vehicle and said that this man was not the suspect and it was not the right black Oldsmobile. This occurred after they found the marijuana and after they had begun the inventory search.
 (Officer Huber's report indicates that he did not arrest the defendant until after the lady had told him it was the wrong vehicle and wrong defendant and before he had begun the inventory search. On the witness stand he stated that he told the defendant about the arrest warrant before the woman came up, although his report does not say that.) The court finds that Mr. Jamison was arrested before the victim told the police they had the wrong man.
 Officer Huber did not lose sight of the black Oldsmobile pointed out by the woman on Groveland, and he is certain that he stopped the car that she identified.
 The gym bag in the trunk was unzipped and opened. The gun was visible without having to open any portion of the bag. It protruded out of the side pouch. The bag of cocaine was also visible.
 ANALYSIS AND CONCLUSIONS OF LAW AS TO JANUARY 11 ARREST The stopping of Mr. Jamison by the officers was not a violation of his constitutional rights. The officers were acting on a complaint of two women who personally reported to Officer Huber that an occupant of a black Oldsmobile had threatened them with a weapon. The women identified the specific vehicle. Because of that, the stop to investigate was reasonable. Nor was the stop done because of an anonymous tip, as was the case in Florida v. J.L. (2000), 120 Supreme Ct. 1375.
 The pat down by Officer Pauley was justified, in view of the woman's complaint. However, the removal of the identification card, which the officer knew was not a weapon, was not authorized. He learned Jamison's identity from the identification card. He then learned that Jamison was the subject of an arrest warrant. That led to a determination that the vehicle should be towed, after first inventorying it and its contents.
 Had the officer learned Jamison's identity lawfully, the search of the vehicle would have been constitutional. But he learned the man's name only by extracting the identification card from his clothing. A pat down search is lawfully done only to search for weapons.
 The taking of the man's identification card exceeded the Terry v. Ohio limits. The man had not refused to give his name. While it was appropriate to investigate him because of the woman's report, there was as yet no basis to arrest him, or tow his car, or search his car. The man had no duty to show any identification. Nor did he have to identify himself.
 Officer Huber had seen the marijuana in the Oldsmobile but did not arrest Jamison for that. The arrest was on the warrant. Hence, the inventory search was because of the arrest on the warrant. The information about defendant's identity was obtained improperly.
 Therefore, the evidence found in the vehicle was the product of an unauthorized search. The evidence found and any statements made must be suppressed. Wong Sun v. United States (1963), 371 U.S. 471.
The appellant, State of Ohio, presents the following sole assignment of error:
 1. THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE FOUND IN DEFENDANT'S CAR BECAUSE THAT EVIDENCE WAS SEIZED PURSUANT TO A PROPER INVENTORY SEARCH OF DEFENDANT'S CAR FOLLOWING HIS ARREST ON TWO OUTSTANDING WARRANTS.
The appellant argues first, that because an outstanding warrant existed for Jamison, a stop is justified and privacy rights of the defendant are not violated, even though the arresting officer has no knowledge of the outstanding warrant until after the stop is effected, citing a long line of cases from this court beginning with City of Dayton v. Click (Oct. 5, 1994), Montgomery App. No. 14328, unreported, discretionary appeal not allowed (1995), 74 Ohio St.3d 14, 18. In the alternative, appellant also presents the argument that the contraband would have inevitably been discovered, citing Nix v. Williams (1984), 467 U.S. 431, 104 S.Ct. 2501; State v. Perkins (1985), 18 Ohio St.3d 193.
The appellee, like the trial court, ignores the Click line of authority and points out that a pat-down search is for weapons, and the officer may only seize items of contraband as long as the item's identity as contraband is "immediately apparent." Minnesota v. Dickerson (1993),508 U.S. 366, 375. Here, Officer Pauley admitted that he did not feel anything like a weapon (Tr. 22), but he felt what he believed was an identification card (Tr. 8, 22), which he reached inside Jamison's pocket and removed. The appellee argues, furthermore, that the State did not meet its burden as to inevitable discovery: "that the police possessed the leads making the discovery inevitable," and that they "were actively pursuing an alternate line of investigation prior to the misconduct." State v. Wilson (1994), 97 Ohio App.3d 333, 336. Furthermore, proof of inevitable discovery "involves no speculative elements but focuses on the demonstrated historical facts capable of ready verification or impeachment." Nix v. Williams (1984), 467 U.S. 431, 444-45, fn. 5.
We agree with the trial court.
If an officer's retrieval of an identification card through a pat-down search is lawful, then anything can be retrieved from the pockets or clothing of any person who has been lawfully stopped. Clearly, the law does not contemplate such an unlimited search. The purpose is to protect the officer from weaponry and, in the process, lawfully retrieving obvious contraband. An identification card fits neither category. The discovery of the outstanding warrants was made possible only by using Jamison's identification card, which had been unlawfully retrieved. The situation here is similar to the scenario in our decision in State v. Lynch (May 6, 1998), Montgomery App. No. 17028, unreported, where we held that evidence unconstitutionally seized before a valid arrest under an outstanding warrant is subject to suppression.
The State presented no evidence that demonstrated that the police would inevitably have discovered Jamison's identity even if they did not have an identification card to rely upon.
Finally, there is no evidence in the record or the hearing transcript that the State even raised the issue of inevitable discovery to the trial court, and is thus presenting it for the first time on appeal. Even if it had merit, we could disregard the argument.
We hereby approve and adopt the relevant portion of the trial court's decision, as quoted above, as our own.
The assignment of error is overruled, and the judgment is affirmed.
BROGAN, J., concurs.