I respectfully dissent from the decision of the majority.
The officers were authorized to stop and detain Defendant-Appellant Jamison to investigate the claim that he was involved in a shooting. Terry v. Ohio (1968), 392 U.S. 1. Upon that same authority, and in view of the particular criminal conduct alleged, the officers were also authorized to perform a pat-down search of Jamison's person to locate any weapons he might use to harm the officers or others. However, the officers were not authorized to reach into his pocket to retrieve an article, the identity card, which they knew from their sense of touch was clearly not a weapon. Minnesota v. Dickerson (1993), 508 U.S. 366. That particular search and seizure was plainly illegal. The issue presented, however, is whether the exclusionary rule should be applied to suppress evidence the officers discovered in their subsequent inventory search of Jamison's vehicle.
Exclusion of evidence for a Fourth Amendment violation is not a constitutional right. United States v. Verdugo-Urquidez (1990),494 U.S. 259. Rather, exclusion is but a remedial measure applied to deter illegal police behavior. Therefore, application of the exclusionary rule should be restricted to those areas where its remedial objectives are most effectively served. United States v. Calandra (1974), 414 U.S. 338.
The trial court suppressed the evidence that police seized in their search of Jamison's automobile on a "fruit of the poisonous tree" finding. That rule permits suppression of not only evidence which is the immediate product of a Fourth Amendment violation, but also derivative evidence obtained in a lawful manner but about which police learned because of the constitutional violation. Wong Sun v. United States (1963), 371 U.S. 471. In that case the court further stated:
 "We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
Id., at 487-488.
Two doctrines, closely related, operate as exceptions to the "but for" test otherwise applicable to evidence derived from an illegal search or seizure. One, the "independent source" rule, provides that if the officer's knowledge of the derivative evidence is gained from an independent source, rather than from the government's own illegality, the derivative evidence may be used. Silverthorne v. United States (1920),251 U.S. 385. The other doctrine, the "inevitable discovery" rule, provides that evidence which was obtained illegally is not subject to suppression if it would have inevitably been obtained lawfully. Nix v. Williams (1984), 467 U.S. 431; State v. Perkins (1985), 18 Ohio St.3d 193.
The evidence which Jamison's motion sought to suppress was seized by officers after they found it in his car during an inventory search when the car was impounded after Jamison's arrest on an outstanding warrant. The officers were commanded by the warrant to arrest Jamison. The trial court found that their search of his vehicle was performed pursuant to the police department's Inventory and Towing Policy, which gave them legal authority to perform the search. South Dakota v. Opperman (1976),428 U.S. 364.
The inventory search of Jamison's vehicle which led police to the evidence they seized was not an exploitation of their prior illegal search of Jamison's person. Both the inventory search and the arrest warrant were, as sources of authority for the actions the officers took, independent of the prior illegality. Silverthorne, supra. The inventory search was sufficiently distinguishable from that illegality to be purged of its taint. Even absent the illegal character of the prior search of Jamison's person, the inventory search would have inevitably led police to the evidence they seized, in view of the authority conferred on them by the warrant. Nix, supra. Because it was the inventory search that yielded the evidence Jamison's motion sought to suppress, the remedial purposes of the exclusionary rule are not served by granting Jamison's motion.
The trial court's order suppressing the evidence police seized from Jamison's vehicle is contrary to a line of decisions by this court which have held that evidence obtained by police in a search incident to a defendant's arrest on an outstanding warrant is not subject to suppression, even though other evidence of the defendant's identity which revealed the existence of the warrant for his arrest was obtained illegally. Dayton v. Click (Oct. 5, 1994), Montgomery App. No. 14328, unreported; State v. Meyers (May 31, 1995), Montgomery App. No. 14856; State v. Ware (Jan. 16, 1998), Montgomery App. No. 16425, unreported; State v. Brown (Jan. 28, 2000), Montgomery App. No. 17965, unreported. However, and because a search incident to arrest may be performed only after the arrest takes place, per Smith v. Ohio (1990), 494 U.S. 541, any evidence that police seize from the defendant during the same encounter but prior to his arrest on the outstanding warrant remains subject to suppression. State v. Lynch (May 16, 1998), Montgomery App. No. 17028, unreported. Obviously, that exception does not apply on these facts.
The decision of the majority repeats the trial court's error, and is subject to an additional indictment; it rejects settled precedent from our court's own prior decisions absent any principled difference between the issues presented here and those in the former cases. It offends the principle of stare decisis in a way explained by Justice Black of the Pennsylvania Supreme Court in McDowell v. Oyer (1853), 21 Pa. 417, 423:
 Stare decisis is itself a principle of great magnitude and importance. It is absolutely necessary to the formation and permanence of any system of jurisprudence. Without it we may fairly be said to have no law; for law is a fixed and established rule, not depending in the slightest degree on the caprice of those who may happen to administer it. I take it that the adjudications of this Court, when they are free from absurdity, not mischievous in practice, and consistent with one another, are the law of the land. It is this law which we are bound to execute, and not any "higher law," manufactured for each special occasion out of our own private feelings and opinions. . . The uncertainty of the law — an uncertainty inseparable from the nature of the science — is a great evil at best, and we would aggravate it terribly if we could be blown about by every wind of doctrine, holding for true to-day what we repudiate as false to-morrow.
I would reverse and remand.
 ___________________ FREDERICK N. YOUNG, J.