OPINION
This appeal is brought by the State of Ohio pursuant to Crim.R. 12(J) from an order of the court of common pleas sustaining defendant-appellee Jacqlyn Sincell's motion to suppress evidence that police had seized from her purse in the course of an arrest. The State contends that the trial court erred in not finding that this evidence is admissible under the inevitable discovery doctrine.
We conclude that the police acted reasonably in retrieving Sincell's purse from the front seat of a truck, in which she had been observed committing an act of prostitution. There was no reason to believe that the driver of the truck, who was being cited, but not arrested, for his participation in the offense, knew Sincell, so that the purse would presumably have been lost to Sincell had it not been retrieved. Although the police officer improperly searched the purse without a warrant, its contents would inevitably have been discovered when Sincell's possessions were inventoried upon her arrival at the jail.
The judgment of the trial court is Reversed, and this cause isRemanded for further proceedings.
 I
At the hearing on Sincell's motion to suppress, the State presented the testimony of Dayton Police detectives August and Knight. The following facts relevant to this case are gleaned from the transcript of that hearing.
Detective August and other members of his vice undercover team were patrolling the area of Main Street and Hudson Avenue, an area known for prostitution and drug dealing, in Dayton. August spotted Sincell, a known prostitute, making eye contact with passing motorists. He later saw her make eye contact with a motorist in a vehicle bearing out-of-county license plates. The motorist stopped after passing her, and Sincell entered the vehicle. The vehicle then traveled into a public park with the vice team following.
Sincell and the male driver of the vehicle exited the vehicle, and walked to a nearby field. The vice team followed, and positioned themselves so they could observe the couple. The officers observed Sincell begin to perform oral sex on the man. At that point, the officers confronted the couple and separated them for questioning. The man admitted he had paid Sincell forty dollars for oral sex. He received a summons to appear in court and was released. Sincell was placed under arrest.
Before the man left the park, the officers noticed a black purse on the front seat of the vehicle. They questioned Sincell and learned that the purse belonged to her. Detectives removed the purse from the vehicle. Upon searching the purse, the officer found a crack pipe inside. Sincell admitted the pipe was hers. A field test revealed cocaine residue on the pipe. Sincell was subsequently indicted for possession of cocaine in an amount less than five grams.
Sincell filed a motion to suppress the evidence obtained as a result of the warrantless search of her purse. At the hearing on the motion, Detective August testified that he never leaves personal property belonging to a person under arrest with anyone other than a family member because of concerns for personal liability if the property is stolen. Detective Knight corroborated August's reason for taking the purse, and further testified that the police department was responsible for Sincell's personal property upon her arrest. Detective August further testified that after he obtained the purse, he conducted a "search incident to arrest."
The trial court sustained Sincell's motion. The trial court found, and the State concedes, that the search of the purse was not constitutionally valid. However, the trial court also found that the cocaine in the purse was not subject to the inevitable discovery rule because it was direct, not derivative, evidence. Alternatively, the judge concluded that even if the inevitable discovery doctrine were applicable, the State could not prevail absent proof that the purse was seized in accordance with a standardized departmental policy requiring the officers to secure the personal property of an arrestee. From this ruling the State appeals.
 II
The State's sole Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY SUPPRESSING THE COCAINE FOUND IN APPELLEE'S PURSE AS IT INEVITABLY WOULD HAVE BEEN DISCOVERED AT THE JAIL DURING THE ROUTINE SEARCH AND BOOKING PROCEDURE.
 The State contends that the trial court should not have suppressed the evidence pertaining to the cocaine found in Sincell's purse. In support, the State argues that the trial court erroneously concluded that the inevitable discovery doctrine does not apply to this case.
In considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. Statev. Mills (1992), 62 Ohio St.3d 357, 366. "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, the appellate court must determine, independently, whether the trial court's conclusions of law, based on those findings of fact, are correct. State v. Klein (1991),73 Ohio App.3d 486, 488.
In 1985, the Supreme Court of Ohio adopted the inevitable discovery exception to the exclusionary rule. State v. Perkins (1985),18 Ohio St.3d 193. The Supreme Court held:
 that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct.
 Id., 196.
"[T]he purpose of the inevitable discovery exception is to prevent the setting aside of criminal convictions that would have been obtained without police misconduct." State v. Pearson (1997), 119 Ohio App.3d 745,754.
In Ohio Search, Search and Seizure (2000) 56, § 2.11, Professor Katz argues that the inevitable discovery doctrine applies only to derivative evidence, not to primary evidence; i.e., primary evidence that is illegally seized may lead to secondary evidence, or fruit of the poisonous tree, which is considered derivative evidence. The trial court relied upon this argument in ruling that the inevitable discovery doctrine is not applicable to the facts of this case, since the cocaine constitutes primary evidence. However, Katz notes that Ohio Supreme Court has recognized the inevitable discovery exception as being applicable to both primary and secondary evidence. See, Ohio Arrest,Search and Seizure (2001) 64, § 2.18, citing State v. Perkins,supra; see also, State v. Harrell (1992), 65 Ohio St.3d 37. Since this court is required to follow the law as set forth by the Ohio Supreme Court, we are bound to hold that the inevitable discovery rule applies to primary evidence, like the primary evidence with which this case is concerned. Consolidated Rail Corp. v. Forest Cartage Co. (1990),68 Ohio App.3d 333, 341. Furthermore, the purpose of the inevitable discovery exception to the exclusionary rule is to ensure that, although the State should not benefit from a wrongful search, neither should the State be put in a worse position as a result of a wrongful search. In view of this purpose, a distinction between the primary and derivative fruits of a wrongful search makes little sense.
We must now decide whether the cocaine in Sincell's purse would inevitably have been discovered even if her purse had not been searched at the time of her arrest. We begin by deciding whether the officers acted properly in removing the purse from the vehicle.
"Normally, a woman's purse is within her immediate control. In that instance, a search of her purse incident to a lawful arrest would be permissible." State v. Robinson (1998), 131 Ohio App.3d 356, 358, citations omitted. "The facts and circumstances of each particular situation, however, must be examined to determine whether the justification for the warrantless search existed." Id. In that case, Robinson "had already been patted down, satisfactorily identified, and secured * * *. Her purse was nowhere near her and utterly outside her immediate control." Id. Therefore, the search of the purse could not be justified as a search incident to the arrest.
In the case before us, although Sincell's purse was not in her possession when it was retrieved, we conclude that the officers acted reasonably, not unreasonably, in retrieving her purse from her customer's truck in order that it might accompany her to the county jail. The record contains evidence indicating that the officers reasonably concluded that it was incumbent upon them to secure Sincell's personal property once she was under arrest because they believed that they, or the police department, would have been responsible for the loss of the purse had they permitted the driver of the vehicle to leave the scene with it; especially given that the driver and Sincell did not know each other and the license plates on the vehicle indicated that the driver did not live in Montgomery County. The record also indicates that the officers would have permitted the driver to keep the purse had he been a friend or family member of Sincell's. While this does not establish the existence of a standardized departmental policy regarding the necessity of securing an arrestee's personal property, it does establish an objectively reasonable purpose for removing the purse from the vehicle. Indeed, it would seem unreasonable for a police officer, in making an arrest, not to retrieve the arrestee's valuable possessions from the scene, in order that those possessions may accompany the arrestee to jail, when there is no readily apparent alternative way of securing the possessions from risk of loss.
We next note that the unrefuted record establishes that the purse would have been properly subjected to an inventory search once Sincell was booked into the jail as part of the routine booking. "Following a lawful arrest, it is reasonable for police to search the personal effects of the arrestee as a part of routine booking procedures." State v. Edwards
(Nov. 12, 1999), Montgomery App. No. 17735, unreported. "Where a routine inventory search would inevitably lead to the discovery of certain evidence, the trial court should not suppress that evidence notwithstanding police error or misconduct." Id. This "`inevitable discovery' exception to the exclusionary rule permits the state to introduce evidence that would have been discovered by lawful means without reference to police error or misconduct." Id., citations omitted.
Based upon the foregoing, we conclude that the officers acted reasonably in retrieving the purse from the vehicle. We further conclude that the purse would properly have been subjected to a search at the police station, and that the cocaine would, inevitably, have been discovered.
The State's sole Assignment of Error is sustained.
 III
The State's sole Assignment of Error being sustained, the judgment of the trial court is Reversed, and this matter is Remanded for further proceedings.
WOLFF, P.J., and GRADY, J., concur.