OPINION
{¶ 1} Appellant, Matthew S. Eckliffe, appeals from the May 24, 2001 judgment entry of the Lake County Court of Common Pleas.
 {¶ 2} On October 24, 2000, Lieutenant Mark Kish ("Lieutenant Kish") of the Fairport Harbor Police Department saw a car in appellant's driveway, with an individual who matched appellant's description in the driver's seat. Lieutenant Kish had previously been notified that the sheriff's department had unsuccessfully attempted to serve appellant with a "secret indictment warrant" for drug trafficking. Lieutenant Kish called for back-up. He then radioed dispatch to confirm, by means of the license plate number, that the car belonged to appellant, and that the warrant was "still in the computer." When the back-up officer, Patrolman Joseph Kulnane ("Patrolman Kulnane"), arrived at the scene, he and Lieutenant Kish removed appellant from his car. They requested appellant's driver's license and confirmed his identity. Appellant was then informed that there was a warrant for his arrest and placed in handcuffs.
 {¶ 3} When appellant was initially arrested, Patrolman Kulnane asked him if he had any illegal possessions on his person. Appellant responded that he did not. Patrolman Kulnane then told appellant that he was going to search him and that he was concerned about being stuck with a needle in the course of the search; therefore, appellant should tell him about any items on his person. Appellant then indicated that he had some powder in his left front pocket. Patrolman Kulnane retrieved three bags of white powder, one bag of vegetable matter, and $450 from appellant's left front pocket. Patrolman Kulnane then placed appellant in the backseat of his police cruiser and informed him of his Miranda
rights.
 {¶ 4} After giving appellant his Miranda warning, Patrolman Kulnane asked appellant to identify the substance contained in the baggies he removed from his pocket, whereupon appellant informed Patrolman Kulnane that he did not wish to speak to him. At that point, Patrolman Kulnane ceased questioning appellant.
 {¶ 5} Lieutenant Kish notified the Lake County Narcotics Agency ("LCNA") of the arrest of appellant and asked if they wished to speak to him. He was told to contact Agent Dennis Sweet ("Agent Sweet") of the Ohio Bureau of Criminal Identification ("BCI"). Agent Sweet met Lieutenant Kish and Patrolman Kulnane at the scene of appellant's arrest.
 {¶ 6} When he arrived at the scene, Agent Sweet removed appellant from Patrolman Kulnane's police cruiser and placed him in his vehicle. Agent Sweet wished to speak to appellant regarding a controlled buy that he had made from appellant earlier that day. The controlled buy was unrelated to the warrant for which the Fairport Harbor Police had arrested appellant.
 {¶ 7} Before speaking to appellant, Agent Sweet asked him if he understood his rights. Appellant responded that he did. Agent Sweet estimated that it was no more than thirty minutes between the time appellant was arrested and advised of his rights and the time that Agent Sweet arrived at the scene. After inquiring as to whether he understood his rights, Agent Sweet told appellant that he had made a controlled buy from him earlier that day. Appellant indicated that he was willing to speak to Agent Sweet about that incident. Therefore, Agent Sweet drove appellant to the Fairport Harbor Police Department to interview him.
 {¶ 8} When they arrived at the police department, they were placed in an interview room. Agent Sweet again asked appellant if he understood his rights, and appellant confirmed that he did. They then discussed appellant's cocaine supplier. Appellant was unable to identify his supplier, so Agent Sweet asked if he had any of this cocaine at his residence. Appellant stated that he did. Agent Sweet asked if he could search appellant's residence, and appellant agreed. Appellant then reviewed a consent-to-search form with Patrolman Jamie Myers ("Patrolman Myers"). Appellant signed the form, and Agent Sweet, in conjunction with the Fairport Harbor Police Department, searched appellant's residence, with appellant's cooperation. During the course of the search, appellant indicated to officers where illegal contraband could be found.
 {¶ 9} On January 19, 2001, appellant was indicted on seven counts, including: Count One, possession of 188.66 grams of cocaine, a violation of R.C. 2925.11 and a second degree felony; Count Two, possession of 905.09 grams of marijuana, a violation of R.C. 2925.11 and a fifth degree felony; Count Three, preparation of cocaine for sale, a violation of R.C. 2925.07 and a fourth degree felony; Count Four, preparation of marijuana for sale, a violation of R.C. 2925.07 and a fifth degree felony; Count Five, receiving stolen property, a violation of R.C. 2913.51(A) and a fourth degree felony; Count Six, possessing criminal tools, a violation of R.C. 2923.24 and a fifth degree felony; and, Count Seven, possession of 28.21 grams of cocaine, a violation of R.C. 2925.11 and a third degree felony.
 {¶ 10} On March 20, 2001, appellant filed a motion to suppress statements made by appellant on October 24, 2000, and evidence seized from his apartment on the same date. A suppression hearing was held on April 6, 2001. In a May 1, 2001 judgment entry, the trial court denied appellant's motion to suppress.
 {¶ 11} On May 23, 2001, appellant entered a plea of no contest to the following counts of the indictment: Count One, possession of cocaine; Count Two, possession of marijuana; Count Five, receiving stolen property; and Count Seven, possessing criminal tools.[1] His plea on Count One was to the lesser included offense of possession of cocaine in violation of R.C. 2925.11, a felony of the third degree. Upon application of the prosecution, the court entered a nolle prosequi on the other counts of the indictment.
 {¶ 12} A sentencing hearing was held on May 16, 2001. In its May 24, 2001 judgment entry, the trial court sentenced appellant to three years on Count One, one year on Count Two, eighteen months on Count Five, and three years on Count Seven, with the sentences to run concurrent to each other, and concurrent to the sentences in Lake County Common Pleas Court Case No. 00-CR-000480.[2]
 {¶ 13} Appellant has filed a timely appeal and makes the following assignments of error:
 {¶ 14} "[1.] The trial court erred in denying [appellant's] [m]otion to [s]uppress.
 {¶ 15} "[2.] The trial court erred and abused its discretion in sentencing [appellant] to a stated term of three years in prison on [C]ounts [O]ne and [S]even, a stated term of one year on [C]ount [T]wo and a stated term of one and one half years on [C]ount [F]ive."
 {¶ 16} In connection with his first assignment of error, appellant posits three arguments: first, that Patrolman Kulnane attempted to interrogate appellant without providing him with a Miranda warning; second, that Agent Sweet's questioning of appellant violated appellant'sMiranda rights; third, that the search of appellant's apartment was conducted without his voluntary consent.
 {¶ 17} With respect to appellant's argument that the police attempted to interrogate him without providing a Miranda warning, we would note that appellant did not make any incriminating statements prior to receiving his Miranda warning, other than to identify the illegal possessions on his person. Here, even if appellant had not indicated that he had items in his pocket, because appellant had been arrested pursuant to a warrant, Patrolman Kulnane could have conducted a search of appellant's person incident to a lawful arrest. "Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." State v. Jones
(1996), 112 Ohio App.3d 206, 215, citing United States v. Robinson
(1973), 414 U.S. 218. Further, even if appellant's statements as to what items he had on his person were suppressed, the items seized from him would have been admissible as evidence under the doctrine of inevitable discovery. Illegally obtained evidence is admissible at trial once it is established that the evidence would have been inevitably discovered during the course of a lawful investigation. State v. Taylor (2000),138 Ohio App.3d 139, 150, citing State v. Perkins (1985),18 Ohio St.3d 193, 196. Here, the three bags of white powder, the bag of vegetable matter, and the $450 found in appellant's pocket would have been discovered either during Patrolman Kulnane's initial frisk of appellant, or while he was being processed at the jail.
 {¶ 18} The second issue raised by appellant is that Agent Sweet violated his Miranda rights by questioning him after appellant had told Patrolman Kulnane that he did not wish to speak to him. With respect to appellant's contention, we note that the Miranda warning given by a police officer must inform the suspect in clear and unequivocal terms that he has the right to remain silent. State v. Mack (1995), 73 Ohio St.3d 502,513, citing Miranda v. Arizona (1966), 384 U.S. 436, 467-468. Further, "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes hisprivilege cannot be other than the product of compulsion, subtle or otherwise." (Emphasis added.) Miranda, supra, at 473-474. A literal interpretation of the foregoing language would suggest that because appellant invoked his Fifth Amendment privilege with Patrolman Kulnane, any subsequent statement taken by Agent Sweet, under any circumstances, would be a violation of appellant's Fifth Amendment rights. However, an exception to this stringent rule was carved out by the Supreme Court inMichigan v. Mosley (1975), 423 U.S. 96.
 {¶ 19} In Mosley, the defendant was arrested in connection with a robbery. After being advised of his Miranda rights, he declined to speak to the police concerning the robberies. Two hours later, after being given a second Miranda warning, he was questioned at a separate location concerning an unrelated murder. The Supreme Court held that the following factors in Mosley demonstrated that the police honored the defendant's right to cut off questioning: (1) the police immediately cased the interrogation upon the defendant's request; (2) questioning was resumed after the passage of a significant period of time; (3) a fresh set ofMiranda warnings was given; and (4) the second interrogation concerned a crime that had not been a subject of the initial interrogation. Id. at 105-107.
 {¶ 20} The relevant facts of this case are as follows: Patrolman Kulnane testified that he advised appellant of his Miranda rights. Once appellant informed Patrolman Kulnane that he did not want to speak to him, Patrolman Kulnane ceased questioning appellant.
 {¶ 21} Agent Sweet was informed by a colleague that appellant was in custody in Fairport Harbor. Agent Sweet had made a controlled buy from appellant earlier in the day and wished to question appellant regarding his source of cocaine. The controlled buy made by Agent Sweet was separate from the matter for which appellant had been stopped by the Fairport Harbor Police.
 {¶ 22} When Agent Sweet arrived at the scene of appellant's arrest, he was informed that appellant had already received a Miranda
warning. He asked appellant if he understood his rights, and appellant indicated that he did. Without providing a renewed Miranda warning, Agent Sweet then drove appellant to the Fairport Harbor Police Department, where they were placed in an interview room. Once in the interview room, Agent Sweet asked appellant if he understood his rights, without providing a fresh Miranda warning, and appellant responded affirmatively. Agent Sweet then questioned appellant concerning his supplier. Agent Sweet testified that at no time during the interview did appellant request an attorney or seek to end the conversation.
 {¶ 23} In this case, the first and fourth factors identified inMosley as indicative of law enforcement respecting a defendant's Miranda
rights were clearly met. With respect to the first Mosley factor, appellant's right to cut off questioning was honored; once appellant informed Patrolman Kulnane that he did not wish to answer his questions, Patrolman Kulnane ceased to speak to him. Also, with respect to the fourth Mosley factor, when Agent Sweet questioned appellant, it was with regard to a separate matter.
 {¶ 24} The facts of the instant case differ from those of Mosley
in two respects: (1) Agent Sweet failed to give appellant a second complete Miranda warning; instead, he asked appellant to confirm that he understood his rights; (2) the period of time that elapsed between appellant invoking his right to remain silent and Agent Sweet asking appellant to answer questions regarding the separate matter was not the two hours that elapsed in Mosley.
 {¶ 25} In State v. Thompson (Jan. 24, 2001), 7th Dist. Nos. 98 JE 28 and 98 JE 29, 2001 WL 69197, at 10, the Seventh Appellate District noted that, in Mosley, "[t]he Supreme Court emphasized over and over the importance of repeating the Miranda warnings prior to the second interrogation." In 1 Katz Gianelli, Criminal Law (1996) 556, Chapter 26.6, the authors noted that one of the "minimal requirements" ofMosley is that "Miranda rights must be read again." Here, while Agent Sweet confirmed that appellant understood his Miranda rights, he did not provide him with a fresh Miranda warning.[3]
 {¶ 26} As previously noted, Mosley, supra, at 106, also requires "the passage of a significant period of time" before law enforcement officials attempt to resume questioning. In Mosley, more than two hours passed between the time when the defendant initially declined to speak to the police and the time officers attempted to question him regarding a separate offence. In the instant matter, Agent Sweet testified that no more than thirty minutes passed between the time appellant was arrested and his arrival at the scene of the arrest.
 {¶ 27} In view of Agent Sweet's failure to provide appellant with a fresh Miranda warning, and the fact that such a short period of time passed between appellant exercising his right to remain silent and Agent Sweet's effort to speak to him, the facts of this case do not fall within the exception to the Miranda rule created by Mosley. Consequently, we conclude that Agent Sweet violated appellant's Fifth Amendment rights. Therefore, appellant's first assignment of error is well-taken. Any evidence seized as a result of Agent Sweet's interrogation of appellant, including evidence seized from appellant's apartment pursuant to appellant granting Agent Sweet consent to search his apartment should have been suppressed. Notwithstanding the foregoing, any evidence seized by Fairport Harbor Police from appellant's person or his car arising from searches conducted incident to the lawful arrest of appellant was properly admissible.
 {¶ 28} In his second assignment of error, appellant asserts that the trial court erred in sentencing him to three years on Counts One and Seven, one year on Count Two, and eighteen months on Count Five. In view of our holding with respect to appellant's first assignment of error, some or all of the issues raised in appellant's second assignment of error may be moot. However, because we are unable to determine from the record before us, which counts of the indictment were premised on evidence that should have been suppressed, we will proceed to address in full the arguments presented by appellant's second assignment of error.
 {¶ 29} Counts One and Seven of appellant's indictment were felonies of the third degree. The prison term for a felony of the third degree is one, two, three, four, or five years. R.C. 2929.14(A)(3). The trial court found that Counts One and Seven were subject to mandatory prison terms under R.C. 2929.13(F) and sentenced appellant to three years on each of those counts.[4]
 {¶ 30} R.C. 2929.14(B) provides that "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense ***, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." The Supreme Court of Ohio has held that "R.C.2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned *** before it can lawfully impose more than the minimum authorized sentence. *** [W]e deduce that the verb `finds' as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the sanctioned reasons." (Emphasis sic.) State v. Edmonson (1999), 86 Ohio St.3d 324, 326.
 {¶ 31} In the instant case, the trial court made the requisite finding that the minimum sentence would demean the seriousness of the offense. The trial court also noted that it considered the various factors set forth in R.C. 2929.12. Pursuant to R.C. 2929.12(D)(5), one of the factors listed as being indicative of the offender committing future crimes is his lack of genuine remorse for the offense. Here, the trial court found that appellant had no genuine remorse. These two findings, that the minimum sentence would demean the seriousness of the offense and that appellant lacked genuine remorse, provided a sufficient basis for the trial court to deviate from the minimum sentence with respect to Counts One and Seven.
 {¶ 32} Appellant contends that there is no evidence in the record to support the trial court's finding that appellant had not shown genuine remorse for his offense. Appellant stated at his sentencing hearing: "Well, I said it before what I did was wrong, I do want to get help, I understand there is consequences [sic] but again you know I do want to get help." While this comment is suggestive of some degree of remorse, the trial court was in a better position to determine whether appellant's remorse was genuine. State v. Nutter (Aug. 24, 2001), 3d Dist. No. 16-01-06, 2001 WL 961748, at 2. Therefore, we cannot determine from the record before us that the trial court erred in finding that appellant did not exhibit genuine remorse for his conduct.
 {¶ 33} In view of the foregoing discussion, we conclude that the trial court sufficiently complied with the requirements of R.C. 2929.14(B) and Edmonson, supra, in sentencing appellant to more than the minimum prison term on Counts One and Seven. While appellant challenges other findings made by the trial court with respect to Counts One and Seven, even if we were to determine that the trial court erred in making those findings, such a determination would not undermine the essential validity of the sentence imposed for Counts One and Seven.
 {¶ 34} We must now consider the sentences imposed for Counts Two and Five. The trial court sentenced appellant to one year on Count Two, a fifth degree felony, and eighteen months on Count Five, a fourth degree felony. Under the prison terms set forth in R.C. 2929.14(A)(4) and (5), those terms represent the maximum terms for fourth and fifth degree felonies.
 {¶ 35} R.C. 2929.14(C) provides that a trial court may impose the maximum sentence for an offender "only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders *** and upon certain repeat violent offenders ***." Further, when imposing the maximum sentence, the court must state its reasons for doing so. R.C. 2929.19(B)(2)(d). In the case sub judice, the trial court did not make the finding required by R.C. 2929.14(C), nor did it state its reasons for imposing the maximum terms for Counts Two and Five.[5]
Consequently, we conclude that, with respect to Counts Two and Five, appellant's second assignment of error has merit, and that the trial court erred in sentencing appellant to the maximum terms on those counts.
 {¶ 36} For the foregoing reasons, the judgment entry of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
JUDITH A. CHRISTLEY and ROBERT A. NADER, JJ., concur.
[1] Appellant signed his written plea on May 16, 2001. However, it was not filed until May 23, 2001.
[2] The trial court's sentence in Case No. 00-CR-000480 was also appealed by appellant. That appeal was addressed by this court in Statev. Eckliffe (Dec. 20, 2002) 11th Dist. No. 2001-L-104.
[3] In State v. Fairchilds (June 12, 1998) 2d Dist. No. 97CA45, 1998 WL 310740, at 3, the Second Appellate District held that a fresh Miranda
warning was not required when the defendant had told the police during his initial interrogation that he did not wish to make a statement "at that time," and the defendant had an "awareness" of his right to remain silent when the police attempted to question him for the second time.
[4] R.C. 2929.13(F)(5) references certain drug offenses that require the imposition of a mandatory prison term. For both Counts One and Seven, appellant was charged with possession of over 25 grams of cocaine. R.C. 2925.11 provides that if the amount of cocaine involved equals of exceeds 25 grams, but is less than one hundred grams, the court shall impose a mandatory prison term.
[5] The trial court's judgment entry adopted the prosecution's sentencing recommendations made at the sentencing hearing. At that hearing, the prosecution offered no reasoning to support the imposition of maximum terms for Counts Two and Five.