Hoover, J., dissenting:
 

 {¶ 25} I respectfully dissent from the per curiam opinion and conclude that the trial court did not err in granting Leonard's motion to suppress. Accordingly, I would overrule both of the State's assignments of error and affirm the judgment of the trial court.
 

 {¶ 26} With regards to the State's first assignment of error, I would conclude that the promise made by the police to elicit the confession was coercive. The police promised Leonard that if she turned over the drugs they believed to be on her person they would allow her to avoid arrest prior to arraignment. In other words, the promise was for (1) immediate release, (2) future indictment, and (3) court summons to answer the charge. Two of the three conditions were met. However, in place of the promised summons Leonard was arrested on a warrant accompanying her secret indictment. Thus, the promise was broken, making it coercive.
 

 {¶ 27} The per curium opinion avoids finding that the promise was broken by explaining that "the video evidence shows that the officers also told Leonard that the matter will be turned over to the prosecutor's office who will take it from there, or that the prosecutor will make a decision as to what to do." However, it is clear that Trooper Lewis testified that he told Leonard she would receive a summons if she turned over the suspected contraband. Leonard did not receive a summons; instead, she was arrested. Thus, I would find that the promise was broken; and police conduct was indeed coercive.
 

 {¶ 28} Having determined that the police conduct was coercive, I must next engage in a totality of the circumstances analysis to determine the voluntariness of the confession. A totality of the circumstances analysis requires consideration of the defendant's "age, mentality, and prior criminal experience * * *; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."
 
 State v. Edwards
 
 ,
 
 49 Ohio St.2d 31
 
 ,
 
 358 N.E.2d 1051
 
 (1976), paragraph two of the syllabus,
 
 vacated on other grounds
 
 ,
 
 438 U.S. 911
 
 ,
 
 98 S.Ct. 3147
 
 ,
 
 57 L.Ed.2d 1155
 
 (1978)
 

 {¶ 29} Here, Leonard was 42 years old at the time of the incident. There was no evidence that her mentality was anything but normal; nor was there evidence that she was of below average intelligence or suffered from a disability. Leonard did indicate to the police during the traffic stop that she did have experience in the criminal justice system; but there is nothing
 in the record to indicate Leonard's full criminal history.
 

 {¶ 30} Regarding the interrogation, there was conflicting evidence concerning whether Leonard was read her
 
 Miranda
 
 rights. The trial court determined that the
 
 Miranda
 
 warnings were given, but questioned the quality of
 
 Miranda
 
 noting the lack of a written waiver and the circumstance that
 
 Miranda
 
 was given on the side of a major roadway. Leonard was also interrogated while along the side of the roadway and while in back of the police cruiser. Clearly, Leonard was in custody of the police and could not leave during the interrogation. After reviewing the video of the interrogation, it does not appear that the interrogation was abnormally long.
 

 {¶ 31} As for inducement, I have already determined that the police engaged in coercive tactics by making promises of leniency that were broken. I also note that the two officers teamed up in their negotiations with Leonard, with Trooper Kuehne suggesting to Leonard that the option explained by his partner was a good deal.
 

 {¶ 32} Considering the totality of the circumstances, I conclude that the police engaged in coercive activity that overbore Leonard's will and rendered her waiver of rights involuntary. Particularly concerning was the broken promise of lenient treatment, and the fact that Leonard was not free to leave during the interrogation. Accordingly, I would overrule the State's first assignment of error.
 

 {¶ 33} My determination of the first assignment of error necessitates that I address the State's second assignment of error. In its second assignment of error, the State contends that had Leonard not confessed and handed over the contraband they would have obtained a search warrant and found the drugs anyways-thus relying upon the inevitable discovery doctrine.
 

 {¶ 34} The inevitable discovery doctrine allows evidence that was obtained illegally to be admitted if it would have inevitably been obtained lawfully.
 
 State v. Bradford,
 
 4th Dist. Adams No. 09CA880,
 
 2010-Ohio-1784
 
 ,
 
 2010 WL 1632318
 
 , ¶ 54, citing
 
 Nix v. Williams,
 

 467 U.S. 431
 
 ,
 
 104 S.Ct. 2501
 
 ,
 
 81 L.Ed.2d 377
 
 (1984). This exception was adopted by the Ohio Supreme Court in
 
 State v. Perkins,
 

 18 Ohio St.3d 193
 
 ,
 
 480 N.E.2d 763
 
 (1985). It is the State's "burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct."
 
 Perkins
 
 at 196,
 
 480 N.E.2d 763
 
 . The State can establish the inevitable discovery of an unconstitutionally seized item by showing (1) "prior to the misconduct, authorities were actively pursuing an alternate line of investigation that would have led to discovery of the item"; or (2) "they would have subsequently discovered the item by virtue of some standardized procedure or established routine."
 
 Bradford
 
 at ¶ 55.
 

 {¶ 35} In the case sub judice, I am not persuaded by the State's argument that the inevitable discovery doctrine would apply because the officers could have obtained a warrant had they sought one. This Court has previously rejected this exact argument and held that the inevitable discovery doctrine should not apply in such a way as to encourage unconstitutional shortcuts by police.
 
 State v. Coyle
 
 , 4th Dist. Ross No. 99CA2480,
 
 2000 WL 283073
 
 , *5 (Mar. 15, 2000). "The [S]tate's purported justification threatens core Fourth Amendment values by sanctioning an unconstitutional shortcut,
 
 i.e.
 
 bodily intrusion without a warrant or exigent circumstances. To apply the inevitable discovery doctrine whenever police
 
 could
 
 have obtained a warrant, yet chose
 
 not
 
 to, would essentially eliminate the warrant requirement and encourage police to proceed without a neutral and detached magistrate's
 probable cause determination." (Emphasis sic.)
 
 Id.
 
 at *6. "We are unwilling to apply the inevitable discovery doctrine in a manner that would uphold a warrantless and non-exigent search whenever a court makes a
 
 post hoc
 
 determination that probable cause existed."
 
 Id.
 

 {¶ 36} I also disagree with the State's contention that this case is similar to
 
 State v. Cundiff
 
 , 10th Dist. Franklin No. 12AP-483,
 
 2013-Ohio-1806
 
 ,
 
 2013 WL 1859154
 
 . In
 
 Cundiff
 
 , buccal swabs were obtained from a rape suspect without a warrant.
 
 Id.
 
 at ¶ 14. The Tenth District held that the inevitable discovery doctrine applied, and affirmed the trial court's denial of appellant's motion to suppress.
 
 Id.
 
 at ¶¶ 20-24. The
 
 Cundiff
 
 decision, however, expressly limited its holding to "the facts presented in this appeal".
 
 Id.
 
 at ¶ 21. The
 
 Cundiff
 
 decision noted that "the DNA evidence would have been (1) available and (2) in the same condition at a later date as it would have been when the buccal swab was taken * * *."
 
 Id.
 
 It then concluded that: "Presumably, the [S]tate would have obtained the same results if the trial court granted the motion to suppress and the [S]tate obtained new buccal swabs pursuant to a search warrant."
 
 Id.
 
 at ¶ 21. Finally, the court noted "this sort of case, involving possible rape or sexual contact, is the type of investigation where a DNA evidence is routinely gathered from suspects" and that "[u]nder similar circumstances, courts in other jurisdictions have applied the inevitable-discovery doctrine * * *."
 
 Id.
 
 at ¶ 20. Simply put,
 
 Cundiff
 
 is wholly inapplicable here, because it presents a unique set of facts and issues distinct from the case sub judice.
 

 {¶ 37} Based on the foregoing, I would conclude that the trial court did not err in determining that the inevitable discovery doctrine did not apply in the case sub judice; and would overrule the State's second assignment of error.
 

 {¶ 38} Having determined that neither of the State's assignments of error is meritorious, I would affirm the judgment of the trial court.