**[Cite as *State v. Tyree*, 2024-Ohio-1186.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-20 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 007 |
| | : | |
| TANYA RAGENE TYREE | : | (Criminal Appeal from Common Pleas |
| aka EARLINE ANN ROYSTAN | : | Court) |
| aka TANYA REGENE WILSON | : | |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 29, 2024

. . . . . . . . . . .

AMY E. BAILEY, Attorney for Appellant

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Tanya Ragene Tyree, appeals from her conviction and sentence on one count of possession of cocaine, a fifth-degree felony. According to Tyree, the trial court abused its discretion when it overruled her motion to suppress evidence. A review of the record reveals that the trial court did not err in finding that police officers had a reasonable, articulable suspicion to stop Tyree's vehicle and that

seized contraband was properly obtained pursuant to the Fourth Amendment's inventory search exception. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} On January 3, 2023, an indictment was filed charging Tyree with possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a). Tyree was initially scheduled for arraignment on January 26, 2023, but the arraignment was rescheduled to February 7, 2023, at the request of Tyree's attorney. However, Tyree failed to appear for arraignment on that date, and the court issued a capias for her arrest. Tyree subsequently appeared, pled not guilty, and was released on her own recognizance.

{¶ 3} On March 3, 2023, Tyree filed a motion to suppress evidence, and the State responded. When Tyree failed to appear for the March 23, 2023 scheduled suppression hearing, the court continued the hearing, issued another capias for her arrest, and noted various bond violations. On April 4, 2023, another indictment was filed in the case, charging Tyree with failure to appear as required by recognizance in violation of R.C. 2937.29, 2937.99(A)(B), a fourth-degree felony. After Tyree appeared in court on April 11, 2023, the court revoked bond and set a suppression hearing for April 26, 2023. Tyree also pled not guilty to the second charge. Ultimately, the suppression hearing was held on May 9, 2023, at which time the court heard testimony from Lt. Robert McConnell and Officer Leland Queen, both of whom were employed by the Mechanicsburg Police Department. Tyree did not testify, nor did she offer any evidence.

{¶ 4} The facts offered during the suppression hearing were as follows. On

December 12, 2022, Lt. McConnell and Officer Queen were traveling together in the same vehicle, as McConnell was training and observing Queen. Transcript of Motion to Suppress Hearing ("Tr."), 60-61. At around 4:30 p.m., the officers were heading eastbound on West Sandusky Street in the Village of Mechanicsburg and were approaching the stoplight on Main Street, which is also designated as State Route 29. *Id.* at 7, 56, and 61. Traffic was moderate at the time. *Id.* at 10. The officers observed a white vehicle ahead of them travel past the stop bar painted on the roadway by approximately half a car length before coming to a stop. Both front tires were over the stop bar. *Id.* at 8. The vehicle did not stop at all nor did it inch up before stopping; instead, it stopped well beyond the stop bar. *Id.* at 55 and 62.

{¶ 5} According to Lt. McConnell, the stop bar was important at that intersection because Mechanicsburg is a farm community. As a result, huge trucks come through and have to be able to negotiate the turns. If cars fail to stop behind the bar, the path of trucks will be blocked and they will not be able to navigate the turn. *Id.* at 8-9. The driver of the white car (later identified as Tyree) had on her right turn signal, but McConnell could not recall if the turn signal was on before or after Tyree stopped over the bar. *Id.* at 9-11. Due to the violation, McConnell initiated a traffic stop. *Id.* at 11.

{¶ 6} When Lt. McConnell approached the car, he was not certain whether he would issue a citation or a warning. It depended on the following points: identifying the driver; ascertaining if the driver had been previously warned; and identifying the driver's traffic history. *Id.* at 11-12. After obtaining Tyree's license, the officers ran her information through LEADS, which was on the computer in the cruiser. During this

process, they discovered that Tyree's license had been suspended for financial responsibility (FRA) non-compliance and that she had a 2022 conviction for driving without a license. *Id.* at 13-14, 50, and 62. Another person was in the car, and that person's driver's license was also suspended. *Id.* at 18, 50, and 63. The car was registered to another person, Tony Tyree, who was not present. *Id.* at 17.

{¶ 7} Lt. McConnell stated that the Mechanicsburg tow policy is fairly strict and requires cars to be towed on a second offense if a person has a prior conviction for driving under suspension or without a driver's license. Under the tow policy, the car also would have been towed based on the FRA noncompliance. Tr. at 14-17 and State's Ex. 1 (the tow policy). Thus, the car had to be impounded at that point. *Id.* at 52.

{¶ 8} McConnell stated that he also had not been concerned about determining if another lawful driver was present to drive the vehicle because he noticed that the vehicle's owner and Tyree lived at the same address. Therefore, a wrongful entrustment citation applied and should have been issued when the registered owner came to pick up the vehicle. Thus, the vehicle had to be towed for wrongful entrustment as well. *Id.* at 17-18 and 50. In any event, no one was present who had a valid license. *Id.* at 17. Regardless, the tow policy required the vehicle to be towed and inventoried. *Id.* at 18 and 22. When a vehicle is towed, the inventory search policy is that every possible crevice and any possible container where there could be items of value must be searched and inventoried. However, locked containers could not be searched. *Id.* at 22-23.

{¶ 9} After learning that Tyree's license had been suspended, Lt. McConnell returned to Tyree's vehicle and asked her to step out of the vehicle. He then explained

the tow policy and that the car would be towed per the policy. *Id.* at 18-19, 50-51, and 57. At that point, Tyree was not free to leave the encounter, and no *Miranda* warnings had been administered. *Id.* at 51. McConnell did not have any weapons or handcuffs out, and Tyree was not handcuffed. *Id.* at 64.

{¶ 10} After explaining the policy, Lt. McConnell asked Tyree if the vehicle contained any contraband or weapons. Tyree responded that there was a "stem" in the vehicle, which was slang for a cocaine pipe. Tr. at 19, 20, 21 and 57. McConnell stated that he asks everyone about contraband and weapons, as it is not uncommon to find things like chemicals that could harm him, and he is always concerned about weapons for safety purposes. At this point, the other individual was still seated in the vehicle. *Id.* at 20-21. Tyree also told McConnell that there was some cocaine in the vehicle. *Id.* at 19.

{¶ 11} Lt. McConnell placed Tyree in his cruiser before he went to search the car. *Id.* at 20. Before the car was searched, the passenger was removed from the car. The passenger then stood with Officer Queen while McConnell searched. *Id.* at 58. He found the cocaine pipe in the middle console but did not immediately find the cocaine. *Id.* At that point, McConnell returned to the cruiser and administered *Miranda* warnings to Tyree. *Id.* He asked Tyree again where the cocaine was, and she provided a better description; he then located the cocaine in an open compartment on the driver's side of the car. *Id.* at 19-20 and 23. Even if Tyree had not made statements about the stem or cocaine, the police would have searched the center console and the compartment next to the driver's side, based on the tow policy. *Id.* at 24-25.

{¶ 12} After hearing the evidence, the trial court denied the motion to suppress in part and granted it in part.  *See* Journal Entry Denying in Part, and Granting in Part, Defendant's Motion to Suppress (May 12, 2023) ("Supp. Dec.").   The court overruled the motion with respect to the seizure of the drug stem pipe and cocaine, because the officers had reasonable, articulable suspicion to stop the vehicle and obtained these items pursuant to the Fourth Amendment's inventory search exception.   *Id.* at p. 1 and 6-8.   In addition, the court overruled the motion as it pertained to post-*Miranda* statements, because Tyree had knowingly, voluntarily, and intelligently waived her rights.   *Id.* at p. 1-2 and 13-15.

{¶ 13} The court granted the motion to suppress with respect to the statements that Tyree made prior to being *Mirandized*.   The court concluded that a reasonable person would have understood herself to be in custody after Lt. McConnell informed Tyree that the vehicle was going to be towed and inventoried.   At that time, Tyree knew she was going to be charged with another traffic offense, knew she lived in an adjacent county, and would have had no expectation that she would be able to freely walk home from the encounter.   *Id.* at p. 1 and 8-13.

{¶ 14} As a final matter, the court concluded the evidence would inevitably have been discovered under the inventory search exception to the Fourth Amendment's warrant requirement.   This was based on the standardized tow policy for impoundment due to the FRA/noncompliance suspension and Tyree's knowledge of her prior conviction of driving under suspension.   *Id.* at 15-18.

{¶ 15} On May 16, 2023, Tyree agreed to plead no contest to possession of

cocaine; in exchange, the State agreed to ask the court to dismiss the second count (the failure to appear charge). The parties also agreed to waive a presentence investigation report and that the State would recommend community control at a residential drug or alcohol treatment facility if Tyree had no further criminal record other than what was already known. Transcript of Plea & Sentencing Hearing, 1-2.

{¶ 16} During the hearing, the court conducted a Crim.R. 11(C) colloquy, accepted the no-contest plea, found Tyree guilty as charged, and immediately proceeded to sentencing. The court sentenced Tyree to 90 days of community control beginning on May 16, 2023. In addition, the court sentenced Tyree to serve 90 days in jail, also beginning on May 16, 2023, with a requirement of being subject to random drug screens. The court then filed the written plea agreement and entry of finding of guilt. *See* Plea Agreement of No Contest and Entry (May 16, 2023). The judgment entry, reflecting the sentence imposed, was then filed on May 17, 2023. Tyree timely appealed.

## II. Denial of Suppression Motion

{¶ 17} Tyree's sole assignment of error states that:

> The Trial Court Abused Its Discretion When Denying Ms. Tyree's Motion to Suppress in Its Entirety.

{¶ 18} Under this assignment of error, Tyree contends that the trial erred in partially denying the suppression motion because the police had no reasonable grounds to believe she was engaging in criminal activity. According to Tyree, she was turning right and had on her blinker, and it was reasonable for her to "inch over the stop bar to view oncoming

traffic." Appellant's Brief at p. 7. Tyree further contends that although she did not have a valid license, she should have been allowed to call a licensed driver to pick up the vehicle. Moreover, Tyree argues that when she was removed from the vehicle, the police had no suspicion of a crime other than that she was driving without a license and had no probable cause to search the car.

{¶ 19} Tyree's brief, therefore, raises two primary issues: (1) whether the police had a reasonable, articulable suspicion for stopping her car; and (2) whether the inventory search was reasonable. We will consider these matters separately.

### A. The Stop of the Automobile

{¶ 20} As a preliminary point, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

{¶ 21} "The Fourth Amendment to the United States Constitution provides, 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue,

but upon probable cause, supported by Oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized.' Article I, Section 14 of the Ohio Constitution contains almost identical language, and [has been interpreted] as affording at least the same protection as the Fourth Amendment." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13, citing *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11.

{¶ 22} "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Further, '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. As a result, "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.*

{¶ 23} Having reviewed the record and the totality of the circumstances, we agree with the trial court that the stop was constitutionally valid. As noted, Tyree was attempting to turn right at a red light but failed to stop at or behind the stop bar. This was a violation of R.C. 4511.13(C)(1)(a), which provides: "Vehicular traffic, streetcars, and trackless trolleys facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop

at a clearly marked stop line; but if there is no stop line, traffic shall stop before entering the crosswalk on the near side of the intersection; or if there is no crosswalk, then before entering the intersection; and shall remain stopped until a signal indication to proceed is displayed * * *." There was no dispute here about the fact that a stop line existed.

{¶ 24} Based on observing this violation, the police had a reasonable, articulable suspicion for the stop. *See Miracle v. Petit*, 3d Dist. Marion No. 9-19-50, 2020-Ohio-1567, ¶ 13 (observation of defendant failing to comply with R.C. 4511.13(C)(1)(a) constituted probable cause for a traffic stop); *State v. Richards*, 2d Dist. Darke No. 1410, 1997 WL 111751, *4 (Mar. 14, 1997) ("observed violations of the motor vehicle laws provide, in themselves, reasonable suspicion that criminal activity is taking place"); *State v. Britt*, 2d Dist. Montgomery No. 26584, 2015-Ohio-3605, ¶ 11 (finding no potential merit in claim of error in overruling motion to suppress; officer found defendant with vehicle stopped all the way into crosswalk and clearly had a basis for the stop).

{¶ 25} In Tyree's case, the trial court found both officers' testimony credible concerning the fact that Tyree had "failed to stop at the 'stop bar.' " Supp. Dec. at p. 6. Furthermore, contrary to Tyree's claim, there was no testimony that she was "inching over the stop bar to view traffic." Tyree did not testify, and both officers specifically said there was no inching forward or stop before Tyree's car crossed the stop bar. The car was also over the bar by a considerable amount. Accordingly, the trial court did not err in concluding that the police had a reasonable, articulable suspicion for stopping the vehicle.

### B. Inventory Search Exception

**{¶ 26}** The second issue is whether the inventory search was reasonable. "Under the Fourth Amendment to the United States Constitution, a search conducted without prior approval of a judge or magistrate is per se unreasonable, subject to certain well-established exceptions." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 567 (1967).

**{¶ 27}** "The inventory-search exception is a well-defined exception to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 20, citing *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). "An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation." *Id.*, citing *State v. Mesa*, 87 Ohio St.3d 105, 109, 717 N.E.2d 329 (1999). "This administrative search and inventory is intended to help guard against claims of theft or careless handling and also protects the police from dangerous instruments." *Id.*, citing *Colorado v. Bertine*, 479 U.S. 367, 373, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

**{¶ 28}** "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus, following *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), *Bertine*, and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109

L.Ed.2d 1 (1990).  In order "to establish a lawful inventory search based on standard police practice, ' "the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." ' " *State v. Nixon*, 2d Dist. Montgomery No. 29606, 2023-Ohio-1160, ¶ 32, quoting *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 13.

{¶ 29} Here, Lt. McConnell testified about the Mechanicsburg tow policy, and the State submitted the policy as an exhibit during the suppression hearing.  Under that policy, " 'Officers may allow a legal licensed driver to take the vehicle except in the following cases: * * * a. driver has prior knowledge they are suspended from prior DUS conviction.' "  Tr. 15-16, quoting Ex. 1, p. 81, 6.01 (Driving Under Suspension and Operating the Vehicle Under the Influence of OVI), section 7(A)a.  Once Lt. McConnell ascertained during the traffic stop that Tyree was illegally driving under an FRA/noncompliance suspension and that she had a prior DUS suspension, he was lawfully able (and required) to tow the vehicle.

{¶ 30} Tyree failed to present any evidence that this the tow policy was not a standardized tow policy; that it had no discernible criteria; that Lt. McConnell's conduct failed to comply with the policy; or that the vehicle was unlawfully towed.  Instead, Tyree argues that the police should have let her call a licensed driver to get the vehicle and that the police had no probable cause to search the car.  In the context of an inventory search, whether the police had probable cause to search is irrelevant, since that is not the basis of the exception.  Furthermore, the police were under no obligation to allow

Tyree to call someone. Neither occupant of the car was legally allowed to drive, and the police were not required to do more than what they did. As an additional point, Lt. McConnell had already decided to tow the car and had explained the tow policy to Tyree before he asked her any questions about potential contraband or weapons. Consequently, the trial court did not err in upholding the inventory search.

{¶ 31} The trial court also commented that "the prosecution had proven by a preponderance of the evidence that the drug evidence would have been inevitably discovered during McConnell's impoundment and subsequent inventory search of the vehicle." Supp. Dec. at p. 18. This is consistent with the law. The Supreme Court of Ohio has held that "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct." *State v. Perkins*, 18 Ohio St.3d 193, 196, 480 N.E.2d 763 (1985), following *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

{¶ 32} Based on our review of the record, we agree with the trial court. As noted, even before Lt. McConnell asked Tyree the questions about contraband or weapons (which the trial court found had violated Tyree's rights), McConnell had decided to tow the car. Thus, the evidence would inevitably have been discovered during an inventory search. Accordingly, Tyree's sole assignment of error lacks merit and is overruled.

### III. Conclusion

{¶ 33} Tyree's assignment of error having been overruled, the judgment of the trial is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.